Jennifer MITCHELL and TCSM, LLC, Appellants

v.

TURBINE RESOURCES UNLIMITED, INC. and Tom George & International A., Inc., Appellees

In re Jennifer Mitchell and TCSM, LLC, Relators

NO. 14–15–00417–CV, NO. 14–16–00102–CV

Court of Appeals of Texas, Houston (14th Dist.).

Opinion Filed March 30, 2017

Rehearing Overruled May 16, 2017

Angela Kay Lutz, W. Joel Bryant, Brendetta Anthony Scott, John H. Trueheart, Jr., Houston, TX, for Appellees.

T. Kyle Bryant, Houston, TX, for Appellants.

Panel consists of Justices Jamison, Busby, and Wise.

## OPINION

J. Brett Busby, Justice

In this consolidated appeal and petition for writ of mandamus, Jennifer Mitchell and Turbine Component Super Market, LLC (TCSM) challenge four trial court orders signed in a post-judgment receivership proceeding. The underlying judgment was rendered in favor of Turbine Resources Unlimited (Turbine) against Tom George and International A., Inc. Appellants Mitchell and TCSM were not parties to the original judgment, but intervened post-judgment to protect their interest in property included in the court's turnover order and receivership. The first challenged order, signed on September 24, 2014, authorized the receiver to sell assets that appellants contend belonged to TCSM and two vehicles that Mitchell claimed she owned. Following an evidentiary hearing, in which Mitchell testified, the trial court signed two additional orders: the April 14, 2015 order denying Mitchell's fourth motion to modify the court orders authorizing sale, and the June 2, 2015 order approving the sale of property that appellants contend belonged to TCSM. Appellants later filed a motion to set aside the master's reports as void, which the trial court denied.

Mitchell and TCSM ask this Court to vacate these orders as well as the January 2, 2014 order adopting the first master's report and the September 5, 2014 order adopting the second master's report, upon which the orders of sale are based. We conclude that: this Court lacks jurisdiction over appellants' challenge to the trial court's September 24, 2014 order of sale; the trial court did not err in denying the motion to modify court orders and signing the June 2, 2015 order of sale; and the trial court did not clearly abuse its discretion in denying the motion to set aside the master's reports. We therefore overrule appellants' issues, affirm the April 14 and June 2, 2015 orders, and deny the petition for writ of mandamus.

### BACKGROUND

#### A. Initial judgment and appointment of master and receiver

This dispute arose from a suit Turbine filed in 2004 against International A., Inc. and Tom George for breach of contract and failure to make payment on a sale of equipment. The trial court granted summary judgment in Turbine's favor in 2006, and Turbine served a writ of execution on George and International A. On December 8, 2006, the trial court signed a turnover order, appointing a receiver. That same day, George filed for chapter 13 bankruptcy protection. George listed his employer as TCSM and his salary as $2,000 per month. The bankruptcy petition was later dismissed because George did not appear for the creditors' meeting.

In October 2007, the trial court signed a supplemental turnover order, appointing a receiver and master in chancery to collect the unpaid final judgment of $188,246.94

plus $10,000 in attorney's fees. The supplemental order placed Tom George and International A under the receivership and appointed Riecke Baumann as master and receiver.[1] *See* Tex. R. Civ. P. 171; Tex. Civ. Prac. & Rem. Code Ann. § 31.002 (West 2015). The court gave the receiver "full power and authority to take possession of all non-exempt property of every defendant that is in any defendant's actual or constructive possession or control." The order also authorized the receiver to order "from all defendants and third parties" the production and turnover of assets, evidence, and documents upon all matters he believed pertain to compliance with the order.

The trial court found George in contempt for knowingly and intentionally violating multiple turnover orders,[2] a compulsion order, and a Rule 11 agreement in which George had promised to make payments to the receiver. The court also found George in contempt for interfering with the receiver's performance of his duties, thwarting the sale of certain property, failing to notify the receiver of the existence of other property, failing to turn over property, and delivering property to other individuals in an effort to hide the property from the receiver.

### B. Master's Reports

The receivership has had a convoluted procedural history, which we explain in some detail to provide context for the parties' arguments. The receiver, acting in his capacity as master, filed multiple master's reports containing his findings. In November 2013, the receiver filed the first master's report, which the trial court adopted and signed on January 2, 2014. The report made the following findings:

- George is the sole owner of the defendant company, International A, Inc., and another company, TCSM. International A, Inc., is defunct (if it ever existed) and TCSM has a forfeited corporate status. According to the records from the Texas Secretary of State, TCSM was formed on January 26, 2005. The franchise was involuntarily ended, but was reformed on November 16, 2007, eleven months after George's nonexempt assets were placed into receivership, including the assets that were used to create TCSM. George's transfer of assets to TCSM was, therefore, void. The corporation was formed for the purpose of hiding assets from the receivership. George has refused to provide proof that anyone else owns TCSM. As there is no proof that TCSM is a corporation, George is its sole proprietor.

- George has used TCSM to fund personal expenses, has co-mingled personal and company funds, and has made TCSM a device by which he has hidden assets from receiver's collection.

- TCSM is George's alter ego. International A, Inc. and TCSM have never existed as corporations and George has always operated them as sole proprietorships to hide assets and pay his personal expenses.

- George is a convicted felon, having pled guilty to fraud in January 2009 in the United States District Court for the Southern District of Texas. To satisfy the plea deal he made with

---

1. The court's supplemental turnover order replaced the original receiver with Baumann, but it provided no reason for doing so.

2. The trial court found George in violation of three turnover orders the court had signed on December 8, 2006, October 5, 2007, and November 12, 2007.

the United States, George paid $250,000 to the United States during the receivership, without advising Receiver.

- George has never accounted for the source of the $250,000, except to claim that $100,000 was lent to him by TCSM and the remainder were loans from family members. No proof or documentation has been provided to prove these loans; the undocumented $100,000 loan from the business is further proof that TCSM is George's alter ego and sole proprietorship.

- On January 6, 2012, the trial court found George to be in contempt of court for not advising the receiver of the sources of the $250,000 George paid the Government to satisfy the plea deal. The contempt order found George knowingly and intentionally violated every order issued by the trial court, including the turnover orders.

- George represented to the court that he lived with his wife, Dorothy George, at 12445 Memorial Drive, Houston, Texas 77024. However, on September 15, 2009, George began leasing an apartment at One Park Place, 1400 McKinney Street, Unit 808, Houston, Texas 77010. The residents of the apartment are George and his girlfriend, Jennifer Mitchell.

- The lease for the apartment is in the name of TCSM, LLC. Included in George's lease application is his business card, which lists his title as President of TCSM, LLC. His application also states that he is self-employed, affirming that TCSM, LLC is his d/b/a and that TCSM is not an LLC.

On March 7, 2014, Mitchell appeared before the trial court pursuant to a subpoena served on her by the receiver. Because Mitchell did not bring documents to show where George could be served with process, as the subpoena requested, the court ordered Mitchell to re-appear on March 28 with either George or proof of where he could be served. The court also ordered Mitchell to appear for a deposition on March 24. When Mitchell failed to appear, the receiver filed a request for sanctions. The trial court signed an order on May 8, 2014, setting a status conference and ordering Mitchell to personally appear at the status conference with proof that she complied with the order to appear for deposition. The court also ordered Mitchell to "bring with her proof of ownership, and the location of every vehicle that she has owned, possessed, or controlled, in the last five years."

Mitchell did not appear at the status conference despite the court's May 8 order. On June 6, 2014, the trial court signed an order requiring Mitchell and George to appear for deposition, bringing with them "proof of the whereabouts and their ownership, or rights to possession, of all vehicles and equipment that they owned, possessed, managed, or held for others during the receivership." Mitchell and George were later deposed but did not provide the requested documentary evidence of ownership.

The receiver supplemented his findings in the second master's report, which found that George repeatedly violated the court's turnover orders by failing to tender numerous luxury vehicles to the receiver, purchasing several Corvettes with non-exempt funds, and hiding other vehicles from the receiver by delivering them to mechanics, who placed liens on the vehicles. The receiver also found that Mitchell claimed sole ownership of two vehicles: a 2009 Bentley and 2011 Ford Expedition. According to the receiver's findings, however,

Mitchell admitted that payments on the cars' notes were regularly made by TCSM, which the Court had previously found was solely owned and controlled by George. The receiver concluded that the two vehicles were subject to the receivership and not owned by Mitchell because Mitchell showed no proof of income apart from TCSM and all car loan payments had been made by TCSM. The report also recounted Mitchell's admission at her deposition that she and George broke into George's Brittmoore office location after the receiver had changed the locks. Upon entering the building, Mitchell and George removed a 2002 Bentley and TCSM inventory subject to the receivership.

The receiver further found that Mitchell and George were common-law spouses and that all property owned by Mitchell was community property subject to the receivership.[3] He cited Mitchell's medical records (which listed her as married), the loan application for the 2011 Expedition (which identified her as "Mrs. Jennifer Mitchell"), and Mitchell's testimony that she divorced her previous husband before she and George moved into an apartment together in 2009. The receiver concluded that the Bentley and the Expedition, which were purchased after 2009, were therefore community property subject to the receivership. Baumann's second master's report was adopted by the trial court in September 2014.

Following its adoption of the second master's report, the trial court signed the challenged September 24, 2014 order, which authorized the receiver to sell, "subject to third parties' rights," various items, including the 2009 Bentley Continental, 2011 Ford Expedition, and inventory located at a Conroe, Texas warehouse "belong-ing to George or TCSM." The order also sanctioned George for his non-compliance with the court's turnover orders and set an October 10, 2014 compliance hearing.

**C. Mitchell's challenge to the receiver's authority**

Although Mitchell was not a party to the initial lawsuit or receivership proceeding, she filed several motions as an "interested third party" to protect her interest in property subject to the receivership. In October 2014, Mitchell filed a motion to modify court orders, asking the court to modify its orders to withdraw authority from the receiver to sell the 2011 Ford Expedition and 2009 Bentley Continental purportedly owned by Mitchell. The motion also attacked several findings in the first and second master's reports regarding George's relationship with Mitchell, their use of TCSM assets to pay for the Expedition and Bentley, and TCSM's status as George's "alter ego."

In January 2015, Baumann filed his third master's report.[4] The report included additional findings that George had violated the court's turnover and contempt orders and findings regarding Mitchell's involvement in George's actions. That same month, counsel for Mitchell appeared on her behalf at a status conference. Following the status conference, the court signed an order acknowledging receipt of the third master's report, but the language adopting the report was crossed out by the trial court.

Mitchell filed a motion objecting to all three master's reports followed by a "Fourth Motion to Modify Court Orders," in which she further argued that the Expedition and Bentley were improperly included in the court's turnover order. Mitchell disputed the receiver's findings that she

---

3. George's wife, Dorothy, died in August 2013.

4. The report was styled Master's Second Supplemental Report.

and George were common-law spouses and that the vehicles were subject to the turnover order. Mitchell filed a "First Supplemental Fourth Motion to Modify Court Order" on January 27, 2015, and an "Emergency Motion for Reconsideration and Notice of Hearing" on February 4.

**D. Mitchell's and TCSM's plea in intervention challenging the master's reports and order of sale**

In March 2015, Mitchell and TCSM filed a plea in intervention, claiming the receiver had wrongfully taken possession of Mitchell's and TCSM's property in an attempt to satisfy the judgment against George and International A. Mitchell again challenged the receiver's inclusion of the Expedition and Bentley in the receivership.

Mitchell later filed a second supplemental fourth motion to modify, contesting the Receiver's findings.[5] Mitchell claimed that she "owns and/or controls" TCSM and its inventory. According to Mitchell, TCSM and its assets were not subject to the turnover order because there had not been a separate judicial process to "pierce the corporate veil" or declare that Mitchell and George were common-law spouses. Therefore, Mitchell argued, the receiver unlawfully confiscated third-party corporate assets under the turnover order. Mitchell asked the court to release the Expedition, Bentley, and inventory allegedly belonging to TCSM from the receivership.

Mitchell, joined by TCSM, also filed an objection to the receiver's motion to approve sale, arguing that the receiver was attempting to sell property that was not owned by the judgment debtor but by a third party, TCSM. According to Mitchell and TCSM, George was merely an employee of TCSM, and the receiver exceeded the

scope of his authority by including property in the receivership that was not owned by George. Mitchell and TCSM argued that the receiver improperly used the turnover proceeding as a vehicle for determining ownership of property and incorrectly concluded that George controlled TCSM and its property, thereby making that property subject to the receivership.

The trial court held an evidentiary hearing on March 30, 2015. After hearing Mitchell's testimony, the trial court signed two orders. The first order, signed April 14, 2015, denied Mitchell's fourth motion to modify court orders and emergency motion for reconsideration. The second order, signed June 2, 2015, approved the sale of the assets that appellants contended were owned by TCSM. This appeal followed.

After perfecting their appeal, Mitchell and TCSM filed a motion to set aside the master's reports as void, which the trial court denied. That ruling is the subject of Mitchell's and TCSM's petition for writ of mandamus.

ANALYSIS

**I. This Court lacks jurisdiction to consider appellants' challenge to the September 24, 2014 order.**

We first address our jurisdiction over the portions of the appeal challenging the trial court's September 24, 2014 order, which authorized the receiver to sell the 2009 Bentley Continental and 2011 Ford Expedition as well as certain assets that appellants contend belong to TCSM.[6] We conclude this Court lacks jurisdiction to consider appellant's challenge to the September 24, 2014 order for two reasons: (1) because the record reflects that Mitchell herself sold the vehicles, this challenge, as

---

5. TCSM did not join in this motion.

6. Mitchell does not challenge this order in her petition for writ of mandamus.

it pertains to the vehicles, is moot; and (2) the order is interlocutory because it does not resolve the discrete issue of Mitchell's or TCSM's ownership interest in the property.

■■■ "A case becomes moot if, since the time of filing, there has ceased to exist a justiciable controversy between the parties—that is, if the issues presented are no longer 'live,' or if the parties lack a legally cognizable interest in the outcome." *Heckman v. Williamson Cty.*, 369 S.W.3d 137, 162 (Tex. 2012). When a party appeals an order appointing a receiver or authorizing sale of certain property and the property has been sold, the appeal of the order becomes moot. *See Beard v. Beard*, 49 S.W.3d 40, 71 (Tex. App.–Waco 2001, pet. denied); *Zipp v. Wuemling*, 218 S.W.3d 71, 73 (Tex. 2007) ("[a]n appeal is moot when a court's action on the merits cannot affect the rights of the parties."). The receiver, as well as the trial court, instructed Mitchell to provide the location and proof of ownership of the vehicles. Mitchell instead sold the vehicles.[7] Because Mitchell no longer has a claim of ownership in the vehicles, her appeal regarding the portion of the order authorizing the receiver to sell the Bentley and Expedition is moot.

■■■ Further, appellants Mitchell and TCSM have no right to appeal any part of the September 24, 2014 order of sale because it did not resolve the discrete issue they raise: their ownership interest in the property. Texas has long recognized the independent and ongoing nature of receivership proceedings. *Hill v. Hill*, 460 S.W.3d 751, 763 (Tex. App.–Dallas 2015,

pet. denied). This case, which arose from a 2004 judgment, is no exception. Discrete orders signed in the course of a receivership proceeding may be appealed even though final judgment has not been rendered in the main case. *Id.* at 763–64. An order in a receivership proceeding must, however, resolve a discrete issue to be a final, appealable order. *See London v. London*, 349 S.W.3d 672, 674 (Tex. App.–Houston [14th Dist.] 2011, no pet.) (citing *Huston v. Fed. Deposit Ins. Corp.*, 800 S.W.2d 845, 847 (Tex. 1990) (op. on reh'g) ). In *Huston*, the supreme court concluded that a receivership order resolves a discrete issue if "it finally adjudicates a substantial right," but is interlocutory if "it merely leads to further hearings on the issue." *Id.*

Here, the order of sale authorized the receiver to sell the property "subject to third parties' rights." Because of this condition, the order did not resolve the discrete issue of Mitchell's or TCSM's ownership interest in the property. In particular, the order led to further hearings regarding the assets appellants contend belong to TCSM; it is therefore interlocutory and not appealable. Accordingly, we do not consider any of appellants' issues as they relate to the September 24, 2014 order.

## II. The trial court did not err in its June 2, 2015 order of sale or in denying Mitchell's motion to modify.

### A. The trial court did not issue orders that substantively altered its judgment after its plenary power expired.

7. The supplemental turnover order instructed "all third parties who hold a defendant's property" to "immediately notify the receiver, and to deliver the property within 3 working days of demand from the receiver." If ownership of the property was in dispute, the order authorized the receiver to "take custody of the asset until the Court can determine the rights of those claiming interests in the asset." The trial court signed an order on November 12, 2015 ordering Mitchell to show cause why she should not be sanctioned for selling the vehicles.

Appellants also challenge the trial court's April 14, 2015 order denying Mitchell's fourth motion to modify and emergency motion for reconsideration, as well as the court's June 2, 2015 order permitting the sale of assets that appellees contend belong to TCSM. In their second issue, appellants argue that the trial court materially altered the original judgment after its plenary power expired by expanding the scope of the parties and property responsible to satisfy the judgment. According to appellants, the trial court improperly adopted the master's reports, which contained findings that included property belonging to Mitchell and TCSM in the receivership. Appellants argue that because they were not parties to the litigation, the trial court had no authority to affect their property rights, and the order allowing sale of the property is void.

■ Generally, a trial court has plenary power to modify its judgment for thirty days after the judgment is signed. Tex. R. Civ. P. 329b(d). In some cases, plenary power may extend up to an additional seventy-five days. Tex. R. Civ. P. 329b(c), (e), (g). Even after plenary power has expired, however, a trial court retains the power to enforce its judgments. *See* Tex. R. Civ. P. 308. This power extends to enforcement of the judgment by execution or other appropriate process when necessary. Tex. R. Civ. P. 621. "The court's post-judgment power to enforce its judgment and to aid the judgment creditor in his efforts to collect on that judgment can last until the judgment is satisfied." *Bahar v. Lyon Fin. Services, Inc.*, 330 S.W.3d 379, 387 (Tex. App.–Austin 2010, pet. denied).

■ Here, the trial court signed an amended order granting turnover relief and appointing a receiver and master, finding that the appointment of a receiver was justified because "the Court believes that non-exempt assets exist ... which defendants tend to hide" and the appointment of a master was justified to aid the court and conserve court resources. The court also found that appointment of a master and receiver was necessary due to George's failure to comply with the court's December 8, 2006 order. The court appointed Riecke Baumann as master in chancery in accordance with Texas Rule of Civil Procedure 171 and as Receiver pursuant to section 31.002 of the Texas Civil Practice and Remedies Code. Even after the court's plenary power had expired, the trial court had the authority to issue these orders to enforce its judgment through execution. As part of that enforcement, the trial court retained the power to approve the master's reports concerning enforcement of the judgment and to authorize him, as receiver, to sell non-exempt property of the judgment debtors. Whether the property in fact belonged to a judgment debtor is a question that goes to the merits of the trial court's orders; it does not affect the court's continuing jurisdiction to enforce its judgment. *See, e.g., Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 76–77 (Tex. 2000) (explaining distinction between right of plaintiff to relief on the merits and jurisdiction of court to afford it). We therefore overrule appellants' second issue.

**B. The trial court had authority under the turnover statute and appellants' plea in intervention to issue the orders.**

■ In their first issue, appellants argue that a separate trial was required to adjudicate ownership of the property in which Mitchell (through TCSM) claimed an interest. According to appellants, the trial court erred in resolving disputed issues of property ownership and alter ego through a turnover proceeding by adopting the master's reports, which formed the factual and legal basis of the trial court's order approving the sale of the property. By approving the sale without adjudicating

the property's ownership in a separate trial, appellants argue, the trial court exceeded its authority under the turnover statute.

For the reasons explained below, we conclude that the turnover statute authorized the trial court's actions because the orders issued before Mitchell injected herself into the proceedings directed only George to turn over the property and did not bind TCSM or Mitchell. Mitchell and TCSM then chose to intervene to claim an interest in the property, so they cannot complain that the trial court thereafter ruled on their claims.

The turnover statute allows a judgment creditor to seek aid from a court in reaching non-exempt property owned by a judgment debtor that cannot readily be attached or levied on by ordinary legal process. Tex. Civ. Prac. & Rem. Code Ann. § 31.002(a). As relevant here, the statute provides that the trial court may "order the judgment debtor to turn over nonexempt property that is in the debtor's possession or is subject to the debtor's control" or "appoint a receiver with the authority to take possession of the nonexempt property." Tex. Civ. Prac. & Rem. Code Ann. § 31.002(b)(1), (3).

In general, "Texas courts do not apply the turnover statute to nonjudgment debtors." *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 227 (Tex. 1991). A court may use the statute, however, to reach assets subject to the control of a judgment debtor that are held by a third party. *Plaza Court, Ltd. v. West*, 879 S.W.2d 271, 276–77 (Tex. App.–Houston 14th Dist. 1994, no writ); *see also Parks v. Parker*, 957 S.W.2d 666, 668 (Tex. App.–Austin 1997, no writ) ("The judgment debtor can also be ordered to turn over property, no matter who possesses it, if the property is subject to his control."). In *Schultz*

*v. Fifth Judicial Dist. Court of Appeals*, the supreme court observed:

> Upon proof of the necessary facts, [the turnover statute] authorizes the trial court to order affirmative action by the judgment debtor *and others* to assist the judgment creditor in subjecting such non-exempt property to satisfaction of the underlying judgment. Such an order acts as a mandatory injunction against the judgment debtor and, if there are such parties, against the receiver and *any third parties interested in the property rights being adjudicated.*

810 S.W.2d 738, 740, 740 (Tex.1991), *abrogated on other grounds by In re Sheshtawy*, 154 S.W.3d 114 (Tex. 2004) (emphasis added).

Our sister court applied these principles in *Bay City Plastics, Inc. v. McEntire*, 106 S.W.3d 321 (Tex. App.–Houston [1st Dist.] 2003, pet. denied). In that case, third parties argued that the trial court erred in applying the turnover statute "in a manner making it applicable to assets in the possession of the third party non-judgment debtors." *Id.* at 325. The court held:

> Although the turnover statute cannot ordinarily be used to adjudicate the ownership of property in a manner that would be binding upon third parties, we disagree with appellants' argument that the trial court was prohibited in this case from determining what property was owned by the judgment debtor to facilitate the issuance of its turnover order. The turnover statute allows a trial court to order a judgment debtor to turn over property that is owned by the judgment debtor if it is subject to the judgment debtor's control. ... The trial court, then, is permitted to determine what property meets those statutory requirements. *See generally Schultz*, 810 S.W.2d at 740 (holding that trial court may issue turnover order against judg-

ment debtor where "factual showing" is made that the judgment debtor (1) has nonexempt property, and (2) that property [is] not readily subject to ordinary execution).

*Id.*

Appellants rely on cases such as *Elgohary v. Herrera Partners, L.P.*, which held that the turnover statute cannot be used as a mechanism to adjudicate a non-debtor's substantive rights in property not subject to the debtor's control. No. 01-13-00193-CV, 2014 WL 2538556, at *5 (Tex. App.–Houston [1st Dist.] June 5, 2014, no pet.) (mem. op.). Unlike in *Elgohary*, however, the receiver did not seek an order in this case directing Mitchell or TCSM to turn over the property that became the subject of the June 2, 2015 order of sale.[8]

Instead, the trial court ordered George—not TCSM—to turn over TCSM assets of which George was the owner. In a supplemental turnover order, the court authorized the receiver to take possession of non-exempt property in George's control even if situated on premises owned by a third party. The receiver found in his first report that TCSM had forfeited its corporate status and therefore George was its sole proprietor when the receivership began; the receiver also directed George—not TCSM—to turn over all turbine parts he or TCSM owned.[9] These findings established that the property was owned or controlled by George as required for relief under the turnover statute. *See Bay City Plastics*, 106 S.W.3d at 325.[10] The court then signed its September 24, 2014 order, which authorized the receiver to sell, "subject to third parties' rights," inventory located at a Conroe, Texas warehouse "belonging to George or TCSM."

These findings and orders alone would not have bound non-debtor third parties such as TCSM and Mitchell.[11] *See id.* ("Any findings made by the trial court to facilitate the issuance of the turnover order will bind the judgment debtors only, and not third parties that the turnover order has not issued against."). But Mitchell injected herself into the proceedings, filing several motions as an "interested third party" to protect her alleged interest in property subject to the receivership.[12] Mitchell and TCSM then filed a plea in intervention, asserting claims to the vehi-

---

8. We therefore need not address the extent to which a trial court may issue a turnover order directed to a third party—an issue that has divided Texas courts. *See Maiz v. Virani*, 311 F.3d 334, 343 n.9 (5th Cir. 2002); *Parks*, 957 S.W.2d at 668.

9. The second report documented George's failure to turn over the parts as required by the turnover order.

10. We note that the master also made findings prior to the intervention that TCSM was George's alter ego and that all property owned by Mitchell was community property subject to the receivership. As we explain below, however, the master's pre-intervention findings did not bind non-parties TCSM or Mitchell. We therefore need not address whether such findings could be made under the turnover statute or required a separate

trial. *Cf. B.Z.B., Inc. v. Clark*, 273 S.W.3d 899, 904 (Tex. App.–Houston [14th Dist.] 2008, no pet.) ("The turnover statute cannot be used to make an alter ego determination which would subject a non-judgment debtor to a turnover procedure."); *Barrera v. State*, 130 S.W.3d 253, 259–60 (Tex. App.–Houston [14th Dist.] 2004, no pet.) (holding trial court could order non-debtor spouse who was party to turnover proceeding to turn over community property subject to debtor spouse's possession or control).

11. Turbine argues, however, that Mitchell agreed to the master's reports through counsel. We address that argument below.

12. We need not address the parties' arguments regarding whether these filings constituted an appearance because Mitchell and TCSM later intervened.

cles and inventory and requesting a finding that this property should not be subject to the judgment.

■ Intervention is a recognized option for a non-party seeking to protect its interest in property that is the subject of a turnover motion. *E.g.*, *Lerma v. Forbes*, 166 S.W.3d 889, 893 (Tex. App.–El Paso 2005, pet. denied); *Breazeale v. Casteel*, 4 S.W.3d 434, 436–37 (Tex. App.–Austin 1999, pet. denied). Having chosen to pursue that option, however, Mitchell and TCSM cannot complain that the trial court thereafter ruled on the ownership issue. *See Cre8 Int'l, LLC v. Rice*, No. 05-14-00377-CV, 2015 WL 3492629, at *3 (Tex. App.–Dallas June 3, 2015, no pet.) (mem. op.).

For these reasons, we conclude that the trial court had authority under the turnover statute and appellants' plea in intervention to issue the orders of which appellants complain. We overrule appellants' first issue.

### C. Appellants intervened and therefore did not need to be served before the trial court signed the order of sale.

■ In their third and fourth issues, appellants argue that the trial court denied them due process by issuing the orders of sale without serving them with process or naming them as parties. Without proper service, appellants contend, the trial court did not have jurisdiction over them or their property, and the order of sale is void.

Turbine responds that the order of sale is not void because Mitchell agreed to the first two master's reports, and therefore she cannot attack the court's adoption of those reports or subsequent orders based on them. According to Turbine, Mitchell's counsel agreed to the second master's report, which took judicial notice of the first report and incorporated its findings and

conclusions. Turbine also contends that the report was introduced, without objection, at the September 19, 2014 hearing.

The record does not clearly show whether Mitchell's counsel agreed to the reports. Turbine cites findings to that effect in the January 2015 third master's report (which the trial court did not adopt), but the record does not include a transcript of the September 19, 2014 hearing or documentary evidence of her counsel's agreement. The record does, however, contain Mitchell's objections to the master's reports, which she filed in October 2014 and January 2015.

■ Assuming without deciding that Mitchell did not agree to the reports, we conclude that the trial court's orders did not offend the requirements of due process regarding service and party status. "It is a basic tenet of American jurisprudence that before a court can affect a person's interest in *in personam* litigation, that person must either be a party to litigation before the court or in privity to a party in litigation before the court." *AVCO Corp. v. Interstate Sw. Ltd.*, 145 S.W.3d 257, 263 (Tex. App.–Houston [14th Dist.] 2004, no pet.). As explained above, the turnover order and master's reports that were issued before appellants injected themselves into the proceedings did not bind appellants. Mitchell then filed motions asserting her interest in property, and Mitchell and TCSM later filed a plea in intervention asserting claims to property. We are aware of no authority that requires an intervenor to be served before the trial court acquires jurisdiction to decide the intervenor's own claims. *Cf. Baker v. Monsanto Co.*, 111 S.W.3d 158, 160 (Tex. 2003) (per curiam) (discussing service on defendant against whom intervenor seeks relief). Because appellants intervened as parties, the trial court had jurisdiction thereafter to rule on their claims.

*Cf. Guaranty Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 657 (Tex. 1990) (observing that intervenor is not required to secure court's permission to intervene and party opposing intervention has burden to challenge it by filing motion to strike); *Houston N. Properties v. White*, 731 S.W.2d 719, 721 (Tex. App.–Houston [1st Dist.] 1987, orig. proceeding) (holding individuals "voluntarily submitted themselves to the jurisdiction of the [trial court] by way of their intervention in the case").

Following appellants' intervention, the trial court held an evidentiary hearing in which Mitchell testified and the intervenors had an opportunity to present evidence. At the opening of Mitchell's testimony, counsel for the receiver objected to "all statements that are made that contradict the two final master's reports." The trial court overruled the objection, stating:

> THE COURT: ... let me get something clear to you right now. And, again, I'm prepared to end this receivership. If you're telling me that—I understand that there is a master's report; but if that master's report has an error in it and that is being brought to my attention and you're attempting to prevent this Court from correcting that error, then I'm going to end this receivership.

Rather than treating the findings in the first two master's reports as conclusive, the court heard Mitchell's testimony on each of the receiver's findings that appellants disputed, including those regarding her ownership of the vehicles, her ownership of TCSM, and the nature of her relationship with George. Mitchell admitted to dating George and living with him for approximately two years, but denied being married to him. Mitchell testified that she purchased TCSM in 2010 for approximately $100,000. But Mitchell was unable to produce a document memorializing the sale of the company, did not file any ownership or incorporation documents with the Secretary of State, and did not know that the company's charter had been forfeited in 2005.[13]

At the conclusion of the hearing, the court denied appellants' motions. The receiver then filed a motion to approve sale of the property that appellants contended was owned by TCSM. In response, appellants filed a motion objecting to the sale. Appellants did not assert that the procedure followed at the evidentiary hearing deprived them of due process or that the evidence was insufficient to support the trial court's orders. Nor do they raise any such issue on appeal. Instead, appellants repeated the same arguments made in prior filings. The court granted the receiver's motion and signed the order of sale on June 2, 2015.

We conclude that given appellants' intervention in the turnover proceeding, due process did not require appellants to be served. We overrule appellants' third and fourth issues.

---

**13.** The trial court summarized Mitchell's testimony regarding her ownership of TCSM as follows:

> THE COURT: All right. If I heard the testimony correct, the Court is to believe that someone who didn't have any formal education or training purchased a business; didn't describe how she obtained, you know, approximately a hundred thousand dollars in funds to fund a business but that she purchased a business that she had never been in before for a hundred thousand dollars; subsequent to that purchased a 2011 Ford, relatively new, and in 2012 purchased a 2009 Bentley for over a hundred thousand dollars, as well, if the evidence that presented by you is to be believed. Is that correct? Did I summarize it correctly?
> MR. PARDO: Yes, Your Honor.
> THE COURT: Okay. The Motion is denied.

### III. Mitchell and TCSM are not entitled to mandamus relief from the trial court's orders adopting the first and second master's reports.

Mitchell and TCSM did not timely appeal the trial court's orders adopting the first and second master's reports, which is not surprising given that they had not yet filed any motions or intervened at the time those orders were signed. Instead, after noticing their appeal, Mitchell and TCSM filed a motion to set aside the master's reports, which the trial court denied.

In their petition for writ of mandamus, relators Mitchell and TCSM argue that the trial court's orders adopting both reports are void because the reports affected relators' rights at a time when the court had no jurisdiction over relators or their property. Relators ask that we order the trial court to set aside the master's reports or, in the alternative, grant their motion to set aside the reports.

#### A. Mandamus standard

■ Mandamus is appropriate when the relator demonstrates that the trial court clearly abused its discretion and there is no adequate remedy by appeal. *In re Eurecat US, Inc.*, 425 S.W.3d 577, 582 (Tex. App.–Houston [14th Dist.] 2014, orig. proceeding). Mandamus review of legal issues is not deferential. A trial court abuses its discretion if it clearly fails to analyze the law correctly or apply the law to the facts of the case. *See In re Cerberus Capital Mgmt. L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding). Signing a void order is a clear abuse of discretion, and a relator is entitled to mandamus relief from such an order without establishing the lack of an adequate appellate remedy. *In re Stern*, 436 S.W.3d 41, 46 (Tex. App.–Houston [14th Dist.] 2014, orig. proceeding).

#### B. The trial court did not clearly abuse its discretion by denying the motion to set aside the master's reports.

■ Relators Mitchell and TCSM argue in two issues that the trial court had no jurisdiction to adopt master's reports affecting their rights because they were not parties at the time, there were no pleadings against them, and no separate trial was held. Relators contend that the January 2, 2014 order adopting the first master's report and the September 5, 2014 order adopting the second master's reports are therefore void, and the trial court clearly abused its discretion in denying their motion to set aside the orders.

■ We conclude, however, that the trial court orders adopting the master's reports are not void. An order or judgment is void only when it is apparent that the court rendering it had no jurisdiction of the parties, no jurisdiction of the subject matter, no jurisdiction to enter the judgment, or no capacity to act as a court. *Mapco, Inc. v. Forrest*, 795 S.W.2d 700, 703 (Tex. 1990) (orig. proceeding). The parties do not dispute that the trial court had jurisdiction over George throughout the turnover proceedings. As explained in Part II.B. above, the turnover orders and the first two master's reports—which led to the September 24, 2014 order of sale "subject to third parties' rights"—did not bind third parties Mitchell or TCSM. *See Bay City Plastics*, 106 S.W.3d at 325. Only after they intervened and asserted claims to property did the trial court rule on their claims, which it had jurisdiction to do. *See* Part II.C., *infra*.

Because the orders adopting the first two master's reports are not void, the trial court did not clearly abuse its discretion in denying relators' motion to set those orders aside. Accordingly, we hold that relators failed to establish their entitlement to

mandamus relief and overrule their two issues.

CONCLUSION

We affirm the orders of April 14 and June 2, 2015, and we deny the petition for writ of mandamus.