**Opinion filed December 12, 2024**



# In The

# Eleventh Court of Appeals

_____

## No. 11-23-00031-CV

_____

## IN RE ESTATE OF TOT S. RICHARDS
## A/K/A THOMAS S. RICHARDS, DECEASED

**On Appeal from the 39th District Court**

**Throckmorton County, Texas**

**Trial Court Cause No. 3552**

### O P I N I O N

This appeal arises from orders entered in a probate proceeding.  In a single issue, Appellant, Debbie Leinenbach, asserts that the trial court erred by denying her supplemental application for declaratory judgment and by authorizing the sale of a tract of real property when she had filed pleadings seeking the partition and distribution of estate property.  We affirm.

*Background Facts*

The decedent, Tot S. Richards, died testate in 2018.  His will named his three daughters, Leinenbach, Appellee Donna Foster, and Appellee Darla Richards as

1

independent co-executors.[1]  Upon the probate of the will, the sisters were issued letters testamentary as independent co-executors in 2018.  However, Leinenbach, Foster, and Richards were subsequently removed as the independent co-executors of the estate.

Prior to the removal of the independent co-executors, Leinenbach filed a pleading entitled "Second Amended Application for Declaratory Judgment; Breach of Statutory and Fiduciary Duties; Constructive Fraud; Conspiracy; Removal of Cloud on Title; Partition and Distribution; and an Accounting."  Leinenbach asserted numerous causes of action against Foster and Richards alleging that they had controlled the actions of the estate by acting in concert as a majority of the co-executors.  Leinenbach also asserted a claim for partition and distribution of the estate under Chapter 360 of the Estates Code.

In April 2022, the trial court entered an order appointing Karen H. Gordon as the receiver of the estate.[2]  Among other things, the order appointing Gordon gave her authority to take possession of all assets of the estate, to manage all assets and business interests of the estate, and to sell any unused property of the estate.  The order appointing Gordon as receiver is not challenged in this appeal.

The series of events leading to this appeal began when Gordon announced her intent to sell a 299-acre tract of real estate known as the "Bird" or "Homeplace."  Gordon sent an e-mail to the attorneys for Leinenbach, Foster, and Richards on October 3, 2022,[3] wherein she announced her plan to sell the parcel for a price suggested by a broker based upon comparable sales and his valuation.  She

---

[1]Appellee Foster has filed a brief in this cause.  However, Appellee Richards has not filed a brief.

[2]Gordon has filed an amicus brief in this appeal in her capacity as receiver.

[3]Unless otherwise indicated, all date references are to events occurring in 2022.

concluded the e-mail as follows: "The marketing will go live with this price this weekend. Please let me know if you have any questions or concerns by end of business this Thursday at 5:00 pm."

Leinenbach's attorney responded to Gordon at 3:57 p.m. on Thursday, October 6, stating Leinenbach's opposition to the sale of the parcel. He opined that "the sale of family land should be the sole discretion of the family." Gordon responded at 4:21 p.m. stating:

> The court ordered me to sell all unproductive property. If [Leinenbach] has an interest, she can make an offer. I told all on Monday that if they have something to say to let me know by 5:00 pm. Therefore if she wants to make an offer, she should do so.

On Monday, October 10, Gordon sent an e-mail to the attorneys for the parties announcing that Foster had made a "full price offer," that it was the only offer received, and that Gordon had accepted it. Gordon sent another e-mail on October 13 stating that the sale of the Homeplace to Foster would close on November 10.

On October 20, Leinenbach filed her "First Supplemental Application for Declaratory Judgment." In this pleading, she primarily complained of Gordon's attempt to sell the Homeplace, detailing the e-mail correspondence discussed above. Leinenbach asserted that Gordon had no authority to "partition" the Homeplace under cither Chapter 360 of the Estates Code or by the order appointing Gordon as receiver. Leinenbach sought the entry of an order declaring that all of the property of the estate is subject to her request for partition and distribution. She also noted in her pleading that there had been no finding by the trial court that the property was not capable of partition in kind.

Gordon filed a response to Leinenbach's supplemental application for declaratory judgment that also included a motion to construe the order appointing

her as receiver, or in the alternative, a motion authorizing her to sell the Homeplace to Foster. She alleged in the pleading that:

> At the date of his death, the Decedent's home consisted of a 299 acre tract of land with a residence and two barns. The land is uncultivated farm land consisting of sunflower fields. It does not earn any income and is a burden on the estate if kept as it incurs expenses for taxes, insurance, utilities and maintenance. It is in the best interest of the estate to sell the property.

On October 28, the trial court conducted a hearing on Leinenbach's supplemental application for declaratory judgment and Gordon's motions, including Gordon's request for authorization to sell the Homeplace to Foster. For her evidence, Leinenbach relied upon the e-mails that had been exchanged regarding the proposed sale of the Homeplace as well as the pleadings on file. Gordon presented the testimony of Russell Webb, a real estate broker that she had retained to perform a valuation of the Homeplace. He testified that he placed a value on the Homeplace of $2,400 per acre for the sale of the surface estate only.

Gordon also testified at the hearing. She testified that the order appointing her as receiver authorized her to sell unused property, and that in her opinion, it was in the best interest of the estate to sell the Homeplace because it was unused and not income producing, and that it was an expense to the estate. Specifically, Gordon testified that she "[didn't] think it's in the best interest to let this house sit vacant so the rats and the cats can occupy it for the next year, or however long it takes them [to resolve the estate], while I pay for utilities and taxes and insurance and maintenance on the house." Gordon also testified that the property was incapable of being partitioned in kind because "you cannot partition a residential property." Gordon opined that the best value that could be obtained for the Homeplace would be to sell it as a whole, rather than breaking it up into smaller pieces.

4

On October 31, the trial court entered an Order Approving Sale of Real Property wherein it determined that Gordon was authorized to sell the Homeplace, and it approved its sale to Foster on the terms to which Gordon had agreed. Then, on November 17, the trial court entered an "Order Denying [Leinenbach's] First Supplemental Application for Declaratory Judgment."

Leinenbach filed a request for findings of fact and conclusions of law on November 18, with respect to the matters considered at the October 28 hearing. The trial court entered its findings and conclusions on December 12. Among other things, the trial court found that the Homeplace was a burden on the estate if kept, that it was in the best interest of the estate to sell the property, and that the price offered by Foster was fair. The trial court also found that the estate should not be partitioned and distributed at the time because there were claims against the estate that had not been resolved, that the sale of the Homeplace does not conflict with the partition and distribution of the estate, and that the property was not capable of being partitioned in kind.

Finally, on February 9, 2023, the trial court signed an Order Severing Claims based upon Foster's motion to sever. The order severed all claims related to Leinenbach's First Supplemental Application for Declaratory Judgment and Gordon's motion to authorize the receiver to sell the Homeplace. Leinenbach also filed her notice of appeal on February 9, 2023 of the "judgment" entered on October 31, which was the Order Approving Sale of Real Property. While Leinenbach did not reference the November 17 order denying her first supplemental application for declaratory judgment, we will treat it as being appealed since they concern the same subject matter.

*Analysis*

Prior to reaching the merits of this appeal, we must resolve two jurisdictional issues raised by Foster and Gordon.

*Timeliness of Leinenbach's Appeal*

Foster has filed a motion to dismiss Leinenbach's appeal for want of jurisdiction. Foster asserts that the Order Approving Sale of Real Property was a final judgment when the trial court entered it on October 31, thereby making Leinenbach's appeal untimely. In her amicus brief, Gordon joins in Foster's contention that Leinenbach's appeal was not timely. Conversely, Leinenbach contends that the trial court's judgment did not become final until the entry of the Order Severing Claims.

As a general rule, a party may appeal only from a final judgment. *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 195 (Tex. 2001). Under *Lehmann*, when a conventional trial on the merits has not occurred, an order or judgment is considered final for purposes of appeal only if it: (1) actually disposes of every pending claim and party; or (2) clearly and unequivocally states that it finally disposes of all claims and all parties. *Id.* at 205.

Probate proceedings, however, are an exception to the "one final judgment" rule. *De Ayala v. Mackie*, 193 S.W.3d 575, 578 (Tex. 2006). In probate cases, "multiple judgments final for purposes of appeal can be rendered on certain discrete issues." *De Ayala*, 193 S.W.3d at 578 (quoting *Lehmann*, 39 S.W.3d at 192). Therefore, probate orders need not dispose of all pending claims and parties in the entire proceeding to be appealable. *See SJ Med. Ctr., L.L.C. v. Estahbanati*, 418 S.W.3d 867, 870–71 (Tex. App.—Houston [14th Dist.] 2013, no pet.); *see also De Ayala*, 193 S.W.3d at 578 (the exception for probate proceedings from the one-final-judgment rule exists, in part, to allow appellate review of controlling, intermediate

issues in order to prevent an error from harming later phases of the proceeding).

In *De Ayala*, the Supreme Court of Texas reaffirmed the test announced in *Crowson v. Wakeham*, 897 S.W.2d 779, 783 (Tex. 1995) for determining appellate jurisdiction of an "ostensibly interlocutory probate order":

> If there is an express statute, such as the one for the complete heirship judgment, declaring the phase of the probate proceedings to be final and appealable, that statute controls. Otherwise, if there is a proceeding of which the order in question may logically be considered a part, but one or more pleadings also part of that proceeding raise issues or parties not disposed of, then the probate order is interlocutory.

*De Ayala*, 193 S.W.3d at 578 (internal quotation omitted). Accordingly, to determine whether a probate court order is final for purposes of appeal, we first give controlling effect to an express statute declaring the phase of the probate proceeding to be final and appealable. *Id.* If no express statute controls, a probate court order is final and appealable only if it "dispose[s] of all parties or issues in a particular phase of the proceedings." *Id.* at 579.

Because no express statute applies in this case, we must determine if the orders entered by the trial court concluded a discrete phase of the proceedings. *See id.* Foster asserts that the order approving the sale of the Homeplace concluded a particular phase of the proceedings. Gordon agrees with Foster's position, relying on receivership cases holding that an order authorizing a receiver to sell a specific asset is an appealable order. *See Sims v. Thomas*, 584 S.W.3d 880, 883 (Tex. App.—Dallas 2019, no pet.); *Lee v. Lee*, 528 S.W.3d 201, 208 (Tex. App.—Houston [14th Dist.] 2017, pet. denied); *see also Huston v. Fed. Deposit Ins. Corp.*, 800 S.W.2d 845, 847 (Tex. 1990) (comparing receiverships to probate proceedings with respect to the possibility of there being more than one final, appealable judgment). Conversely, Leinenbach contends that the order authorizing the sale of the Homeplace and the order denying her supplemental application for declaratory relief

7

essentially relate back to her prior pleading seeking the partition and distribution of the entire estate, rather than concluding a discrete phase of the case.

Viewed in isolation, the Order Approving the Sale of Real Property suggests that it was final and appealable at the time of its entry, particularly when one considers receivership cases. *See Sims*, 584 S.W.3d at 883; *Lee*, 528 S.W.3d at 208. However, this is not a receivership case per se, but rather it is a probate proceeding. Further, the Order Approving the Sale of Real Property is not the only order entered by the trial court because it also entered the Order Denying [Leinenbach's] First Supplemental Application for Declaratory Judgment. In this regard, the trial court found in its findings and conclusions from the relevant hearing that "[t]he Estate should not be partitioned and distributed at this time because there remain claims against the Estate that have not been resolved." Accordingly, the two orders entered after the October 28 hearing related back to Leinenbach's pending request to partition and distribute the entire estate and thus, they were not appealable until the entry of the order of severance.

Moreover, even if the Order Approving Sale of Real Property was final for appellate purposes upon its entry, Leinenbach's appeal was still timely. Because Leinenbach timely filed her request for findings of fact and conclusions of law, the deadline for filing her notice of appeal was January 30, 2023. *See* TEX. R. APP. P. 4.1(a), 26.1(a)(4). Leinenbach did not file her notice of appeal by this date, but she did file it ten days later on February 9, 2023. A motion for extension of time is necessarily implied when an appellant, acting in good faith, files a notice of appeal beyond the time allowed by Rule 26.1 but within the fifteen-day grace period provided by Rule 26.3 for filing a motion for extension of time. *See Verburgt v. Dorner*, 959 S.W.2d 615, 617 (Tex. 1997) (construing the predecessor to Rule 26). An appellate court can grant a retroactive extension if (1) the notice of appeal is filed

within 15 days after the deadline and (2) the appellant provides a reasonable explanation for the notice's untimeliness.  *See* TEX. R. APP. P. 10.5(b)(1)(C), (2)(A), 26.3.  Here, Leinenbach has provided a reasonable explanation of why she filed her notice of appeal on February 9, 2023—because she did not believe that the trial court's orders were appealable until after the entry of the severance order.  *See Hone v. Hanafin*, 104 S.W.3d 884, 886–87 (Tex. 2003) (discussing what constitutes a reasonable explanation and explaining that, if the appellant offers a plausible good faith justification for filing her notice of appeal when she did, then absent intentional misconduct, the explanation is reasonable).

We deny Foster's motion to dismiss Leinenbach's appeal for want of jurisdiction.

*Mootness*

Gordon also asserts that Leinenbach's appeal is now moot because the closing of the sale of the Homeplace has occurred.  Gordon contends that it was incumbent on Leinenbach to immediately file a notice of appeal of the Order Approving Sale after it was entered and seek a stay with this Court to ensure that the sale was not consummated in order to prevent the case from becoming moot after the sale closed. *See Estate Land Co. v. Wiese*, 546 S.W.3d 322, 326 (Tex. App.—Houston [14th Dist.] 2017, pet. denied) ("Because appellants did not seek an emergency stay, supersedeas bond, or otherwise suspend the enforcement of the trial court's post-judgment orders, the sale of the property at issue was completed and, as such, the issues in this case must be dismissed as moot.").

In her briefing, Gordon relies on an opinion from the Fifth Court of Appeals in *In re Estate of Webb* to support this proposition.  No. 05-22-00673-CV, 2023 WL 5992961 (Tex. App.—Dallas Sept. 15, 2023) (*Webb I*), *opinion withdrawn and superseded on denial of reh'g*, No. 05-22-00673-CV, 2023 WL 7144639 (Tex.

9

App.—Dallas Oct. 31, 2023, no pet.). As noted in the citation history, the version of *Webb* relied upon by Gordon was subsequently withdrawn. Further, the superseding opinion in *Webb* did not conclude that the case was moot. 2023 WL 7144639 (*Webb II*). Irrespective of this fact, we have considered the mootness principle relied upon in *Webb I* to determine its applicability to this proceeding. *See State ex rel. Best v. Harper*, 562 S.W.3d 1, 7 (Tex. 2018) (Mootness is a jurisdictional issue that appellate courts must consider sua sponte even if litigants do not raise it.).

"A case becomes moot if, since the time of filing, there has ceased to exist a justiciable controversy between the parties—that is, if the issues presented are no longer 'live,' or if the parties lack a legally cognizable interest in the outcome." *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 162 (Tex. 2012). "The mootness doctrine applies to cases in which a justiciable controversy exists between the parties at the time the case arose, but the live controversy ceases because of subsequent events." *Matthews ex rel. M.M. v. Kountze Indep. Sch. Dist.*, 484 S.W.3d 416, 418 (Tex. 2016). An appeal is rendered moot when there ceases to be a live controversy between the parties such that appellate relief would be futile. *See Marshall v. Hous. Auth. of City of San Antonio*, 198 S.W.3d 782, 787 (Tex. 2006).

The conveyance of property can moot an appeal. *Lee*, 528 S.W.3d at 209. Generally, "[w]hen a party appeals an order appointing a receiver or authorizing sale of certain property and the property has been sold, the appeal of the order becomes moot." *Mitchell v. Turbine Res. Unlimited, Inc.*, 523 S.W.3d 189, 196 (Tex. App.—Houston [14th Dist.] 2017, pet. denied); *see Antolik v. Antolik*, 625 S.W.3d 530, 541–43 (Tex. App.—Texarkana 2021, pet. denied) (collecting cases). The principle behind this general rule is that the trial court is no longer able to afford relief if the

property has been conveyed to a third party that was not subject to the jurisdiction of the trial court. *See Antolik*, 625 S.W.3d at 541–43; *Mitchell*, 523 S.W.3d at 196.

In *Lee*, the Fourteenth Court of Appeals recognized an exception to this general rule. The court concluded that an appeal from an order approving a settlement was not rendered moot even though the settlement agreement had closed, and an interest affected by it had been conveyed to a trust. *Lee*, 528 S.W.3d at 209–10. The court in *Lee* distinguished the holding in *Mitchell* by noting that:

> the parties in this case continue to have a live controversy for which appellate relief potentially is available. The promissory note can be rescinded; money paid can be refunded; and a "satisfaction of judgment" can be set aside. As for the conveyance of real property, the settlement resulted in conveyances only from Ronald to Legacy, in its capacity as the Trust's receiver, and if Susan should prevail, these transactions can be reversed. . . .
>
> Because the evidence before us does not indicate that anything has been done that cannot be undone, or that the parties' dispute about the settlement has ceased to be a live controversy, we conclude that Susan's appeal of the order approving the settlement is not moot.

*Id.* (internal citation omitted).

The court in *Antolik* examined the holding in *Lee*. *Antolik*, 625 S.W.3d at 542. The court noted:

> In *Lee*, the settlement agreement was an agreement between the two litigants. Likewise, one party had conveyed his interests in certain property to a testamentary trust of which he and the other litigant were beneficiaries. That same party executed a promissory note to the other party and had made a payment toward the cash portion of the settlement agreement. The only third party involved in those transactions was the testamentary trust, of which both litigants were beneficiaries.

*Id.* (internal citations omitted). The court in *Antolik* distinguished *Lee* on the basis that the circumstances in *Antolik* involved "unrelated third parties" that precluded the ability to undo the sale of property by a receiver. *Id.* at 541–43.

The circumstances in this appeal are more akin to the facts in *Lee* than in *Antolik*. Based on the order signed by the trial court, Gordon conveyed the property to Foster, a party that has filed a brief in this appeal. Simply put, the conveyance of the Homeplace to Foster can be undone. *See Lee*, 528 S.W.3d at 209–10. This is not a situation where the property was conveyed to an unrelated third party not before the trial court that would preclude the transaction from being set aside. *See Antolik*, 625 S.W.3d at 541–43. Accordingly, Leinenbach's appeal has not become moot.

*Chapter 360*

Section 360.001(a) of the Estates Code provides that:

> At any time after the first anniversary of the date original letters testamentary or of administration are granted, an executor, administrator, heir, or devisee of a decedent's estate, by written application filed in the court in which the estate is pending, may request the partition and distribution of the estate.

TEX. EST. CODE ANN. § 360.001 (West 2020). Section 360.002 applies to a request for a "distribution of any portion of the estate." *Id.* § 360.002. By their express terms, Sections 360.001 and 360.002 permit a designated class of individuals to *request* the partition and distribution of the estate or a portion of the estate. The remainder of Chapter 360 sets out the procedures that govern a request under Sections 360.001 and 360.002.

Foster asserts that the provisions of Chapter 360 of the Estates Code are inapplicable to this proceeding because the appointment of a receiver had the effect of taking the probate out of administration and thus, outside of the application of the Estates Code. However, Foster cites no authority in support of this proposition, and we have found none to the effect that the appointment of a receiver in a probate case causes the provisions of the Estates Code to no longer to be applicable. But we need

12

not answer this question based upon the trial court's resolution of Leinenbach's request.

Gordon asserts a similar but different argument by contending that Chapter 360 does not apply because the probate did not arise from a dependent administration. In this regard, Chapter 360 is not included within the provisions applicable to an independent administration. EST. § 401.001 et. seq.; *see Baker v. Hammett*, 789 S.W.2d 682, 685 & n. 4 (Tex. App.—Texarkana 1990, no writ) ("The only section in the Probate Code regarding mandatory distribution of an estate by an independent executor is [the predecessor statute to Section 405.001 of the Estates Code]."); Stanley M. Johanson, *Johanson's Tex. Estates Code Ann.* § 360.001 cmt. (2024) ("Section 360.001 does not apply to independent administrations.") (citing *Baker*). As noted by the court in *Baker*:

> The application of the Probate Code to independent administrations is limited; deference is allowed in order to free the independent executor from judicial supervision and to effect the distribution of the estate with a minimum of costs and delays. The Probate Code provides that as long as the estate is represented by an independent executor, further action of any nature should not be had in the court except where the Code specifically and explicitly provides for some action in the county court.

789 S.W.2d at 683 (internal citations omitted). However, statutes applicable to an independent administration indicate that the partition and distribution provisions for supervised estates can be applicable to an independent administration at some point later in the probate proceedings. *See* EST. §§ 405.001(b)(1); 405.008 (West 2020).

We will assume without deciding that Chapter 360 is applicable to this probate proceeding. By doing so, we note an additional argument made by Foster to the effect that Leinenbach did not comply with the personal service requirements of Chapter 360 by failing to personally serve Foster and Gordon with her supplemental claim seeking to partition the Homeplace. *See id.* at §§ 360.051–.052. However,

we need not resolve these procedural complaints in light of the trial court's resolution of Leinenbach's request.

Leinenbach cites several provisions of Chapter 360 to essentially assert that she had the unilateral right to compel the partition in kind of the Homeplace. In this regard, Leinenbach argues that her "supplemental application for declaratory judgment sought interpretation of the trial court's duties pursuant to a request for partition and distribution per Section 360 of the Texas Estates Code." Leinenbach contends that the trial court failed to comply with several requirements of Chapter 360.

Leinenbach is incorrect in her interpretation of Chapter 360 and the manner in which the trial court applied it with respect to the sale of the Homeplace. Even if one assumes that Chapter 360 is applicable to this proceeding, its provisions do not compel the partition in kind of the Homeplace based upon the mere request of a devisee. Section 360.002(c) provides that the court "*may* distribute any portion of the estate the court *considers advisable*." *Id.* § 360.002(c) (emphasis added). The emphasized language indicates that the probate court has a measure of discretion to determine whether to order the partition in kind of an item of estate property. Additionally, Section 360.102 is prefaced on the following condition: "*If the court determines* that the estate should be partitioned and distributed." *Id.* § 360.102 (emphasis added).

Furthermore, Section 360.151 only requires the appointment of commissioners to partition estate property if "the court has not previously determined that the estate is incapable of partition." *Id.* at § 360.151. Here, the trial court found that the Homeplace "is not capable of being partitioned in kind." This finding by the trial court is adverse to Leinenbach's contention that she was entitled to compel the partition in kind of the Homeplace under Chapter 360. *See id.*

14

However, Leinenbach has not challenged this finding on appeal or the evidence supporting it.[4]  When an appellant does not challenge the trial court's findings of fact, those findings are binding upon both the party and the appellate court.  *See McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986).  Accordingly, we overrule Leinenbach's sole issue on appeal.

## This Court's Ruling

We affirm the orders of the trial court.

JOHN M. BAILEY

CHIEF JUSTICE

December 12, 2024

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.

---

[4]As we previously noted, Gordon testified at the October 28 hearing that the Homeplace was incapable of being partitioned in kind.