# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-21-00502-CV

---

**Natin Paul; WC 1st and Trinity, LP; WC 1st and Trinity, GP, LLC; WC 3rd and Congress, LP; and WC 3rd and Congress, GP, LLC, Appellants**

**v.**

**The Roy F. and JoAnn Cole Mitte Foundation, Appellee**

---

### FROM THE 126TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-18-007636, THE HONORABLE JAN SOIFER, JUDGE PRESIDING

---

### M E M O R A N D U M   O P I N I O N

This is the latest appeal to arise out of a commercial dispute between appellants—Natin Paul and several corporate entities that he controls—and the Roy F. and JoAnn Cole Mitte Foundation. The most recent appeal concerned the appointment of a receiver over two entities and their properties pending resolution of arbitration proceedings. *See generally WC 1st & Trinity, LP v. Roy F. & JoAnn Cole Mitte Found.*, No. 03-19-00799-CV, 2021 WL 4465995 (Tex. App.—Austin Sept. 30, 2021, pet. denied) (mem. op.) [*WC 1st & Trinity*]. Appellants now challenge the district court's judgment confirming the arbitrator's award and its order directing the receiver to liquidate the entities under receivership. Also before the Court are Mitte's motion to dismiss portions of the appeal and Paul's motion for review of a post-judgment injunction. We deny both motions and affirm the judgment.

# BACKGROUND

We draw the following factual background from the record before us in this case as well as the record in *WC 1st & Trinity*.[1]

*Original Agreement*

Paul is a real estate investor who does business through a network of entities that use "World Class" or "WC" in the name. His principal entity is World Class Capital Group (WCCG). This dispute concerns two limited partnerships: WC 1st and Trinity, LP and WC 3rd and Congress, LP (Limited Partnerships). These entities each own a piece of property in downtown Austin at the location suggested by their names: WC 1st and Trinity, LP owns property at the corner of First and Trinity Streets (Trinity Property), and WC 3rd and Congress, LP owns property at the corner of Third Street and Congress Avenue (Congress Property and, collectively with the Trinity Property, the Properties).

The general partner of each entity was a limited-liability corporation with almost the same name: WC 1st and Trinity GP, LLC, and WC 3rd and Congress GP, LLC (collectively, General Partners). Paul owns and controls both general partnerships. In accordance with each limited partnership agreement, each general partner owned a controlling interest in its respective limited partnership and had sole authority to manage the limited partnership's affairs.

Paul initially represented to investors that he was either developing the Properties or marketing them for sale. In 2011, the Roy F. and JoAnn Cole Mitte Foundation (Mitte), a

---

[1] We take judicial notice of the record in *WC 1st & Trinity. See Reynolds v. Quantlab Trading Partners US, LP*, 608 S.W.3d 549, 558 (Tex. App.—Houston [14th Dist.] 2020, no pet.) ("An appellate court may take judicial notice of its own records in the same or related proceedings involving the same or nearly the same parties.").

nonprofit organization, invested a portion of its endowment with the Limited Partnerships. It acquired approximately 16% of WC 1st and Trinity, LP and 6% of WC 3rd and Congress, LP.

*Lawsuit and Arbitration Proceedings*

The dispute began in 2018 when the General Partners allegedly refused to provide Mitte with financial information about the Limited Partnerships. Mitte sued the General Partners and the Limited Partnerships (collectively, World Class Entities) in Travis County District Court. In response, the World Class Entities invoked the arbitration provision in the limited partnership agreements. In July of 2019, the parties reached a settlement agreement in the arbitration where the World Class Entities agreed to purchase Mitte's interests in the Limited Partnerships for $10.5 million.

Four days before payment was due, the FBI raided the World Class Entities' offices and Paul's residence in connection with a pending federal criminal investigation. On the day before the payment deadline, the World Class Entities informed Mitte that no payment would be made. The settlement agreement gave Mitte two options in the event of nonpayment: end the arbitration and sue for breach of the settlement agreement or declare the agreement void and continue with the arbitration. Mitte chose the latter option, and the arbitration continued.

*Appointment of a Receiver*

In October of 2019, Mitte filed a motion asking the arbitrator to appoint a receiver over the Limited Partnerships, arguing that their asserts were "at imminent risk of being lost, removed, or materially injured." The motion cited the FBI raid, the World Class Entities' failure to pay the amount due under the settlement agreement, and other factors showing that the entities might be in financial distress. The arbitrator granted the motion and appointed

3

Gregory S. Milligan as the receiver. At the request of counsel for the World Class Entities, the arbitrator delayed signing the order until the following Monday so that counsel could review the order over the weekend. On Monday, however, the World Class Entities represented to the arbitrator and Mitte's attorney that the two properties had been sold to unnamed "affiliates"; the Trinity Property had purportedly sold for $23 million, and the Congress Property for $25 million. According to the letter, the sale price for the Trinity Property was "equal to the highest offer yet made" on that property. Both representations were later found to be false. *See WC 1st & Trinity*, 2021 WL 4465995, at *11.

The arbitrator nonetheless signed the order appointing Milligan as receiver. Mitte filed a petition with the district court to confirm Milligan's appointment as receiver, which the presiding judge granted. The World Class Entities then filed an interlocutory appeal as well as a petition for mandamus relief, seeking a stay of the order. Three days later, Mitte petitioned the same district court to appoint a receiver over the Limited Partnerships and the Properties under its statutory authority. At the hearing on that motion, counsel for the World Class Entities represented that the transfer had not occurred. The district court granted the motion and appointed Milligan as receiver over the Limited Partnerships and all their properties. The World Class entities filed an interlocutory appeal and sought emergency relief.

This Court issued a stay prohibiting any alienation of property belonging to the Limited Partnerships and abated and remanded for the district court to determine whether the World Class Entities' rights "would be adequately protected by supersedeas or another order under Texas Rule of Appellate Procedure 24." *Id.* at *3. The district court ordered the World Class Entities to post a $3,875,305.00 supersedeas bond by April 7, 2020. *Id.* The World Class Entities sought and received a two-week extension, making the bond due on April 21, 2020. *Id.*

4

The day before the bond was due, Paul created two limited liability companies, 1st and Trinity Super Majority, LLC and 3rd and Congress Super Majority, LLC (Supermajority Entities). On the same day, the General Partners, WCCG, and other entities purportedly transferred their interests in the Limited Partnerships to the Supermajority Entities. Paul executed the documents on behalf of the transferors and the transferees.[2] Meanwhile, no bond was posted, and we lifted our stay of the receivership order. *Id.* This Court subsequently affirmed the district court's appointment of the receiver. *See id.* at *7–14.[3]

*The Arbitration Continues*

Proceedings continued before the arbitrator while the receivership was on appeal. Mitte had asserted claims in its individual capacity and derivatively on behalf of the Limited Partnerships. With the permission of the arbitrator, Mitte amended its pleadings to include Paul as a party in his personal capacity under the theory that the General Partners are Paul's alter egos. The World Class Entities filed a motion for summary judgment arguing, inter alia, that the arbitrator lacked jurisdiction over Paul because Mitte's alter ego theory was not meritorious. The arbitrator denied the World Class Entities' motion.

---

[2] The Supermajority Entities subsequently filed a petition in intervention seeking declaratory relief regarding Milligan's powers as receiver. In July 2020, the district court granted Mitte's motion to strike their petition. The Supermajority Entities then filed a separate lawsuit against Mitte, Milligan, and their attorneys seeking to invalidate the receivership orders. *1st & Trinity Super Majority, LLC v. Milligan*, No. 08-20-00230-CV, ___ S.W.3d ___, ___, 2022 WL 2759049, at *4 (Tex. App.—El Paso July 14, 2022, no pet.). The district court dismissed the claims against all defendants, and our sister court affirmed. *Id.* at *1.

[3] In a separate opinion issued the same day, this Court dismissed the petition for writ of mandamus as moot given its resolution of the interlocutory appeal. *In re WC 1st & Trinity, LP*, No. 03-19-00798-CV, 2021 WL 4465988, at *1 (Tex. App.—Austin Sept. 30, 2021, orig. proceeding).

In February of 2021, the arbitrator rendered a final award in favor of Mitte on its direct and derivative claims for breach of contract and breach of fiduciary duty and awarded $1,909,125.20 in damages. The arbitrator further concluded that the General Partners are Paul's alter egos and that "the corporate form of these entities is disregarded for the claims asserted in this proceeding and relief awarded herein." Accordingly, Paul and the General Partners "shall be held jointly and severally liable for this proceeding's monetary awards and shall be equally bound by the non-monetary relief."

The arbitrator also granted extensive non-monetary relief. As relevant here, the arbitrator ordered the "involuntary winding up and termination" of the Limited Partnerships and the sale of their properties and directed that Mitte receive its pro-rated share of the profits. She further directed that if damages are not paid to Mitte before the winding up, Mitte will be paid out of the proceeds that the General Partners "or any other entities directly owned by Natin Paul or for whom Natin Paul is the ultimate beneficial owner," including the Supermajority Entities, "would otherwise receive" from the liquidation and winding up of the Limited Partnerships.

*Post-Award Litigation*

Mitte subsequently filed a petition in the district court to confirm the award under the Texas Arbitration Act (TAA). *See generally* Tex. Civ. Prac. & Rem. Code §§ 171.001–.098. Paul and the World Class Entities (collectively, appellants) responded and moved to vacate the award. On July 8, 2021, the district court signed a "Final Judgment Confirming Arbitration Award," and a Supplemental Receivership Order Authorizing Liquidation and Winding Up of Partnerships (Supplemental Receivership Order). Appellants filed a motion for new trial that was overruled by operation of law. On October 21, 2021, appellants filed notice of appeal.

6

Mitte filed a partial motion to dismiss arguing that we lack jurisdiction over the Supplemental Receivership Order.

Paul superseded the judgment as to himself by filing a cash deposit with the district court. *See* Tex. R. App. P. 24.1(a)(3). At Mitte's request, the district court entered a temporary injunction prohibiting Paul and the General Partners from transferring "any of their assets for less than fair value" and requiring each of them to, on the first day of the month "file a sworn report to the Court, with notice to all parties, listing each transfer, conveyance, or dissipation of assets in excess of $25,000 made over the course of the prior month, or, if applicable, that no such transfers or conveyances were made." *See id.* R. 24.2(d) (authorizing trial court to issue a post-judgment injunction to prevent debtor from dissipating or transferring assets to escape judgment). Paul subsequently filed a motion for review of this injunction. *See id.* R. 24.4(a) ("A party may seek review of the trial court's ruling by motion filed in the court of appeals with jurisdiction or potential jurisdiction over the appeal from the judgment in the case.").

## PAUL'S MOTION FOR REVIEW

We begin with Paul's motion for review of the district court's post-judgment temporary injunction. Paul argues that the district court abused its discretion by restricting him from dissipating or transferring any assets "for less than fair value" and by requiring him to file monthly reports "listing each transfer, conveyance, or dissipation of assets in excess of $25,000 made over the course of the prior month."

We review a post-judgment injunction issued under Rule 24.2(d) for an abuse of discretion. *Emeritus Corp. v. Ofczarzak*, 198 S.W.3d 222, 225 (Tex. App.—San Antonio 2006,

7

no pet.).  Under that standard, "we defer 'to the trial court's factual determinations if they are supported by evidence,' but review legal determinations de novo."  *Haedge v. Central Tex. Cattlemen's Ass'n*, 603 S.W.3d 824, 827 (Tex. 2020) (per curiam) (quoting *Stockton v. Offenbach*, 336 S.W.3d 610, 615 (Tex. 2011)).  The interpretation of procedural rules is a legal question.  *Long v. Castle Tex. Prod. Ltd. P'ship*, 426 S.W.3d 73, 78 (Tex. 2014).  We interpret procedural rules according to the same principles as statutes.  *Bethel v. Quilling, Selander, Lownds, Winslett & Moser, P.C.*, 595 S.W.3d 651, 654 (Tex. 2020).  Thus, we "begin with the text of the rule and construe it according to its plain meaning."  *Id.* at 654–55.

Rule 24.2(d) provides, "The trial court may enjoin the judgment debtor from **dissipating or transferring assets to avoid satisfaction of the judgment**, but the trial court may not make any order that interferes with the judgment debtor's use, transfer, conveyance, or dissipation of assets in the normal course of business."  Tex. R. App. P. 24.2(d) (emphasis added).  Paul argues that the emphasized language is "a limitation on the trial court's authority" that the district court exceeded by requiring that all transfers be for fair value and requiring him to file monthly reports.  In other words, he contends that neither prohibition constitutes an injunction against "dissipating or transferring assets to avoid satisfaction of the judgment."  Mitte responds that these provisions define the prohibited conduct and aid in enforcing the injunction.

We agree with Mitte.  Paul effectively presumes that a court would not have power to enjoin a judgment debtor from dissipating or transferring assets absent Rule 24.2.  However, "every court with jurisdiction to render a judgment also has the inherent authority to enforce its judgments."  *Alexander Dubose Jefferson & Townsend LLP v. Chevron Phillips Chem. Co., L.P.*, 540 S.W.3d 577, 581 (Tex. 2018).  This inherent authority includes the power "to enjoin a judgment debtor's waste or disposal of assets that would be subject to collection."

8

*Emeritus Corp.*, 198 S.W.3d at 226. Rule 24.2(d) requires a court to grant such relief without interfering in the debtor's conduct of the regular course of business. *See* Tex. R. App. P. 24.2(d). The rule contains no other limitations on the court's authority to enforce its judgments by enjoining a debtor from dissipating assets, and we "have no right to engraft upon the statute any conditions or provisions not placed there by the legislature." *See In re Geomet Recycling LLC*, 578 S.W.3d 82, 87 (Tex. 2019) (orig. proceeding) (citing *Iliff v. Iliff*, 339 S.W.3d 74, 80–81 (Tex. 2011)). Thus, to determine whether the district court exceeded the scope of permissible relief, we look to other procedural rules pertaining to injunctions. *See Hogan v. Zoanni*, 627 S.W.3d 163, 169 (Tex. 2021) ("We do not look at statutory provisions in isolation but rather derive the . . . statute's meaning from the statute as a whole."); *Nelson v. Vernco Const., Inc.*, 367 S.W.3d 516, 521 (Tex. App.—El Paso 2012, no pet.) (applying general rules on injunctions in appeal of Rule 24.2 injunction); *Emeritus Corp.*, 198 S.W.3d at 226–27 (same).

"Every order granting an injunction . . . . shall be specific in terms; shall describe in reasonable detail and not by reference to the complaint or other document, the act or acts sought to be restrained." Tex. R. Civ. P. 683. Thus, an "injunction must be 'in clear, specific and unambiguous terms' so that the party enjoined can understand the duties or obligations imposed by the injunction and so that the court can determine whether the injunction has been violated." *TMRJ Holdings, Inc. v. Inhance Techs., LLC*, 540 S.W.3d 202, 212 (Tex. App.—Houston [1st Dist.] 2018, no pet.) (quoting *Ex parte Blasingame*, 748 S.W.2d 444, 446 (Tex. 1988)). "Further, an injunction must be narrowly tailored to address the offending conduct—it must not be so broad that it would enjoin a defendant from acting within its lawful rights." *Id*.

Applying these principles to Rule 24.2, an injunction must inform the defendant of the distinction between "dissipating or transferring assets to avoid satisfaction of the

9

judgment" and the "use, transfer, conveyance, or dissipation of assets in the normal course of business." *See* Tex. R. App. P. 24.2(d); *TMRJ Holdings*, 540 S.W.3d at 212. The injunction here accomplishes this by prohibiting Paul from dissipating or transferring assets "for less than fair value" but not "for fair value in the normal course of business." This is consistent with Texas law, which makes whether a transfer was made "without receiving a reasonably equivalent value in exchange for the transfer or obligation" a central consideration in determining whether the transfer was fraudulent. *See* Tex. Bus. & Com. Code §§ 24.005(b)(8); .006. The "fair-value limitation" is not a distinct prohibition but defines what constitutes the prohibited conduct to enable Paul to determine what transfers are permissible. *See Gilbreath v. Horan*, No. 01-17-00316-CV, ___ S.W.3d ___, ___, 2022 WL 2720680, at *60 (Tex. App.—Houston [1st Dist.] July 14, 2022, no pet.) ("[A]n injunction must be as 'definite, clear, and precise as possible and when practicable it should inform the defendant of the acts he is restrained from doing.'" (quoting *Computek Computer & Office Supplies, Inc. v. Walton*, 156 S.W.3d 217, 220–21 (Tex. App.—Dallas 2005, no pet.))). The district court did not abuse its discretion by including the fair-value limitation.

The requirement that Paul file monthly reports is also permissible. Although an injunction must be narrowly tailored to address the offending conduct set out in the rule, *see TMRJ Holdings*, 540 S.W.3d at 212, it also "should be broad enough to prevent a repetition of the evil sought to be corrected," *see Livingston v. Livingston*, 537 S.W.3d 578, 588 (Tex. App.—Houston [1st Dist.] 2017, no pet.). The district court had previously heard evidence of unexplained transfers of significant funds from various World Class Entities to WCCG. *See WC 1st & Trinity*, 2021 WL 4465995, at *11. The transfers were only discovered because Milligan's powers as receiver enabled him to obtain the Limited Partnerships' financial records directly

from their financial institution. *Id.* at *13. Additionally, we concluded that the evidence supported the district court's finding that appellants had "misrepresented that the Properties had been sold" at a fair market price "so that Mitte would accept less than the true value of its interest in the Limited Partnerships." *Id.* at *11. Under these circumstances, requiring Paul to file monthly reports was a reasonable means for the district court to determine whether Paul was complying with the injunction against dissipating or transferring assets to avoid satisfaction of the judgment. *See TMRJ Holdings*, 540 S.W.3d at 212.

We conclude that the district court did not abuse its discretion by imposing the fair-value and mandatory reporting requirements, and we deny Paul's motion for review.

## MITTE'S PARTIAL MOTION TO DISMISS

We turn next to Mitte's partial motion to dismiss this appeal for want of jurisdiction. *See* Tex. R. App. P. 42.3(a).

We review questions of jurisdiction de novo. *Southwestern Elec. Power Co. v. Lynch*, 595 S.W.3d 678, 682 (Tex. 2020). This Court's jurisdiction is limited to final judgments and certain interlocutory orders made appealable by statute. *See* Tex. Civ. Prac. & Rem. Code §§ 51.012, .014; *Electric Reliability Council of Tex., Inc. v. Panda Power Generation Infrastructure Fund, LLC*, 619 S.W.3d 628, 632 (Tex. 2021). Further, a timely notice of appeal is necessary to invoke this Court's jurisdiction. *Mitschke v. Borromeo*, 645 S.W.3d 251, 253 (Tex. 2022). "Generally, a party perfects appeal by filing written notice of appeal within thirty days after the judgment is signed." *Housing Auth. of City of Austin v. Elbendary*, 581 S.W.3d 488, 491 (Tex. App.—Austin 2019, no pet.) (citing Tex. R. App. P. 25.1, 26.1).

11

Mitte argues that we lack jurisdiction over the Supplemental Receivership Order because it is not final for purposes of appeal.[4] There is ordinarily only one final judgment in a case. *See* Tex. R. Civ. P. 301 ("Only one final judgment shall be rendered in any cause except where it is otherwise specially provided by law."). However, "receivership proceedings are an exception to the one-final-judgment rule." *Hill v. Hill*, 460 S.W.3d 751, 763 (Tex. App.—Dallas 2015, pet. denied). "[A] trial court's order that resolves a discrete issue in connection with any receivership has the same force and effect as any other final adjudication of a court, and thus, is appealable." *Huston v. F.D.I.C.*, 800 S.W.2d 845, 847 (Tex. 1990). To fall within this exception, "the order appealed from must finally dispose of all issues in a discrete part or phase of the receivership." *Sims v. Thomas*, 584 S.W.3d 880, 883 (Tex. App.—Dallas 2019, no pet.).

Mitte argues that the Supplemental Receivership Order is not final because it allows the receiver to market the properties for sale "but expressly requires further trial court approval before any sale is approved." To support this position, Mitte cites cases holding that orders that require further approval before completing a sale were not final. *E.g.*, *Mitchell v. Turbine Res. Unlimited, Inc.*, 523 S.W.3d 189, 196 (Tex. App.—Houston [14th Dist.] 2017, pet. denied) (holding that order that "authorized the receiver to sell the property 'subject to third parties' rights'" did not resolve discrete issues over disputed ownership); *Art Inst. of Chicago v. Integral Hedging, L.P.*, 129 S.W.3d 564, 570–72 (Tex. App.—Dallas 2003, no pet.) (holding that order authorizing receiver to sell unspecified assets to pay attorney's fees was not final

---

[4] Mitte also challenges our jurisdiction over another ruling listed in the notice of appeal, the "Denial of Defendants' Motion to Vacate the Receivership Order and Terminate the Receivership." Specifically, Mitte argues that we lack jurisdiction because the district court never reduced its oral ruling to writing. We need not and do not address this issue because appellants do not challenge that ruling on the merits. *See* Tex. R. App. P. 47.1.

12

because court had not adjudicated all pending fee claims). Appellants respond that the Supplemental Receivership Order is final because it is "effectively the appointment of a new receiver under a different statute and standard."

We agree with appellants that the Supplemental Receivership Order is final for purposes of appeal. The district court originally appointed Milligan receiver under Section 11.404 of the Business Organizations Code. *See WC 1st & Trinity*, 2021 WL 4465995, at *7–8. Section 11.404 authorizes a court to appoint a rehabilitative receiver "over the property and business" of an entity. *See* Tex. Bus. Orgs. Code § 11.404(b); *Ritchie v. Rupe*, 443 S.W.3d 856, 863 (Tex. 2014). The district court's order provided that the receiver may not "liquidate or otherwise dispose of" the Limited Partnerships' assets without court approval and directed the receiver to come up with a plan to rehabilitate the Limited Partnerships. Mitte subsequently filed its "Request for Supplemental Order Allowing Liquidation of Partnerships" and asked the court to authorize the receiver to liquidate the Limited Partnerships under Section 11.405. That statute provides that a court "may order the liquidation of the property and business" of an entity and "may appoint a receiver to effect the liquidation" if, relevant here, the entity "is in receivership and the court does not find that any plan presented before the first anniversary of the date the receiver was appointed is feasible for remedying the condition requiring appointment of the receiver." Tex. Bus. Orgs. Code § 11.405(a)(3). The Supplemental Receivership Order affirmatively states that no plan for "remedying the condition requiring appointment of the Receiver" was feasible and authorized the receiver to begin liquidating the Limited Partnerships. The Supplemental Receivership Order resolved a discrete issue because it effectively ended the

rehabilitative phase of the receivership.[5] The Supplemental Receivership Order is final for purposes of appeal.

In the alternative, Mitte argues that the law of the case doctrine precludes appellants from challenging the Supplemental Receivership Order. After this Court issued its opinion in *WC 1st & Trinity*, appellants filed an emergency motion seeking to vacate the Supplemental Receivership Order, arguing that it was void because it threatened our jurisdiction and the effectiveness of the relief appellants sought.[6] *See* Tex. R. App. P. 29.5(b) (providing that while interlocutory appeal is pending, trial court "must not make an order that . . . interferes with or impairs the jurisdiction of the appellate court or effectiveness of any relief sought or that may be granted on appeal"). The Court denied the motion without written order. Mitte argues that decision constitutes the law of the case and deprives this Court of subject matter jurisdiction over

---

[5] That does not mean we agree with appellants that the Supplemental Receivership Order was "effectively the appointment of a new receiver." As Mitte points out, an order that appoints a receiver is an appealable interlocutory order under Subsection 51.014(a)(1). *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(1) (authorizing "appeal from an interlocutory order" that "appoints a receiver or trustee"). An appeal of an interlocutory order must be filed within twenty days after the judgment is signed. Tex. R. App. P. 26.1(b). Appeals from interlocutory orders when allowed by statute are considered accelerated, and filing "a motion for new trial, any other post-trial motion, or a request for findings of fact will not extend the time to perfect an accelerated appeal." *Id.* R. 28.1; *see Gibson v. Cuellar*, 440 S.W.3d 150, 153–54 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (citing cases dismissing untimely appeals of orders appointing receivers). The twenty-day deadline is not applicable here because the Supplemental Receivership Order did not "appoint a new receiver" but resolved a discrete phase of an ongoing receivership. See *WC 1st & Trinity*, 2021 WL 4465995, at \*6 (explaining narrow reach of subsection 51.014(a)(1)).

[6] The Court had not addressed the Supplemental Receivership Order in its opinion in that case. *See generally WC 1st & Trinity, LP v. Roy F. & JoAnn Cole Mitte Found.*, No. 03-19-00799-CV, 2021 WL 4465995 (Tex. App.—Austin Sept. 30, 2021, pet. denied) (mem. op.).

14

the appeal from the Supplemental Receivership Order.  Appellants respond that the law of the case doctrine does not apply and, even if it does, it does not deprive this Court of jurisdiction.

We need not decide whether the law of the case doctrine would apply because it would not deprive this Court of jurisdiction.  Subject matter jurisdiction "refers to a court's statutory or constitutional power to adjudicate a case."  *In re Guardianship of Fairley*, 650 S.W.3d 372, 379 (Tex. 2022).  The subject matter jurisdiction of Texas courts "derives solely from the Texas Constitution and state statutes." *Id.*

The law of the case doctrine provides that "a decision rendered in a former appeal of a case is generally binding in a later appeal of the same case." *Paradigm Oil, Inc. v. Retamco Operating, Inc.*, 372 S.W.3d 177, 182 (Tex. 2012) (citing *Briscoe v. Goodmark Corp.*, 102 S.W.3d 714, 716 (Tex. 2003)).  The doctrine is based on public policy and is aimed at putting an end to litigation. *Briscoe*, 102 S.W.3d at 716.  Importantly, it does not deprive a court of appeals of power to decide any part of a case. *See Gotham Ins. Co. v. Warren E & P, Inc.*, 455 S.W.3d 558, 562 n.8 (Tex. 2014) ("Under the law of the case doctrine, a court of appeals is ordinarily bound by its initial decision if there is a subsequent appeal in the same case; but a determination to revisit an earlier decision is within the discretion of the court under the particular circumstances of each case."); *Shiloh Treatment Ctr., Inc. v. Ward*, 608 S.W.3d 337, 341 (Tex. App.—Houston [1st Dist.] 2020, pet. denied) ("Application of this doctrine is flexible, left to the discretion of the court, and determined according to the particular circumstances of the case.").  Even if our decision denying the motion for emergency relief is the law of the case, it would not deprive us of jurisdiction over appellants' appeal of the Supplemental Receivership Order.

We deny the motion to dismiss.

15

**DISCUSSION**

Appellants argue in their first two issues that the district court lacked jurisdiction to enter the Supplemental Receivership Order after the arbitration completed and, in the alternative, that the order is not supported by the pleadings. In their remaining issues, appellants contend that the district court erred by confirming the final award.

*Applicable law*

The TAA provides that an agreement to arbitrate that meets certain conditions is valid, Tex. Civ. Prac. & Rem. Code § 171.001, and "confers jurisdiction" on trial courts "to enforce the agreement and to render judgment on an award under this chapter," *id.* § 171.081. Under the Act, the trial court must stay its own proceeding and order the parties to arbitration if an applicant shows the existence of a valid agreement to arbitrate covering the dispute. *See id.* §§ 171.021, .025. Texas law favors arbitration, and "judicial review of an arbitration award is extraordinarily narrow." *Hoskins v. Hoskins*, 497 S.W.3d 490, 494 (Tex. 2016). The TAA provides that a court, on application of a party, "shall confirm" an arbitration award "[u]nless grounds are offered for vacating, modifying, or correcting an award under Section 171.088 or 171.091." Tex. Civ. Prac. & Rem. Code § 171.087; *see Hoskins*, 497 S.W.3d at 495 (holding that grounds enumerated in TAA are exclusive). If the court grants an order confirming or modifying an award, "the court shall enter a judgment or decree conforming to the order. The judgment or decree may be enforced in the same manner as any other judgment or decree." Tex. Civ. Prac. & Rem. Code § 171.092(a).

16

*Jurisdiction Over Receivership*

First, appellants argue that the Supplemental Receivership Order is void because the district court had no power to act. *See Electric Reliability Council*, 619 S.W.3d at 640 ("A judgment is void only when it is apparent that the court rendering judgment had . . . no capacity to act." (citing *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 863 (Tex. 2010)). Specifically, they argue that the district court lacked jurisdiction because the award is equivalent to a final judgment. They reason that the district court could not grant additional relief without setting the award aside, which it did not do. Mitte responds that the district court retained jurisdiction over the receivership.

We agree with Mitte. The principle that an arbitration award has the same effect as the judgment of a court of last resort expresses the level of deference courts must afford to arbitration awards. *See CVN Grp., Inc. v. Delgado*, 95 S.W.3d 234, 245 (Tex. 2002) ("An arbitration award has the effect of a judgment of a court of last resort and is entitled to great deference in a court of law."). The supreme court has cited *Delgado* several times to explain why judicial review of an arbitration award is generally extremely narrow. *See, e.g.*, *Nafta Traders, Inc. v. Quinn*, 339 S.W.3d 84, 95 & n.53 (Tex. 2011); *East Tex. Salt Water Disposal Co., Inc. v. Werline*, 307 S.W.3d 267, 271 n.11 (Tex. 2010); *City of Pasadena v. Smith*, 292 S.W.3d 14, 20 n.42 (Tex. 2009). That level of deference does not transform an award into the final judgment of a court. To the contrary, the TAA expressly states that a court that issues an order confirming an award shall enter judgment consistent with that order. Tex. Civ. Prac. & Rem. Code § 171.092(a). The district court here accordingly rendered judgment confirming the award.

17

Nevertheless, appellants insist that the district court was required to set aside the judgment before granting the Supplemental Receivership Order because "[o]nly one judgment may be entered in a cause." However, Rule 301 provides that "[o]nly one final judgment shall be rendered in any cause except where it is otherwise specially provided by law." Tex. R. Civ. P. 301. As we explained above, "receivership proceedings are an exception to the one-final-judgment rule." *Hill*, 460 S.W.3d at 763. "Texas has long recognized the independent and ongoing nature of receivership proceedings." *Mitchell*, 523 S.W.3d at 196 (citing *Hill*, 460 S.W.3d at 763). A receivership "is not like an ordinary lawsuit in which the issues may be drawn by the pleadings as soon as discovery is complete, and then promptly tried to a final judgment, which may then be enforced by execution." *Hill*, 460 S.W.3d at 763.

This case is no exception. The district court originally appointed a receiver to protect the Limited Partnerships and the Properties. *See generally WC 1st & Trinity*, 2021 WL 4465995, at *3, 7–14; *see also* Tex. Civ. Prac. & Rem. Code § 171.086(a)(2), (b)(1) (providing that even while arbitration is pending, party may apply to court for order to "invoke the jurisdiction of the court over an ancillary proceeding in rem, . . . in the manner and subject to the conditions under which the proceeding may be instituted and conducted ancillary to a civil action in a district court."). The receivership continued in effect, except when stayed by this Court during appeal, during the arbitration, the filing of federal bankruptcy petitions, and other litigation. *See Hill*, 460 S.W.3d at 764 ("[A]t least as long as the main case is on appeal, the trial court has jurisdiction to appoint, control, modify, or otherwise deal with a receivership related to the main case[.]"). Even though the arbitrator rendered a final award, the district court

retained jurisdiction to modify the receivership as necessary.[7] *See id.*; *Anderson v. Archer*, No. 03-19-00003-CV, 2019 WL 6205524, at \*5 (Tex. App.—Austin Nov. 21, 2019, pet. denied) (mem. op.) (explaining that trial court's authority over receivership "includes modifying the court's previous orders to respond to new circumstances").

We conclude the district court did not lose jurisdiction over the receivership by rendering judgment on the arbitrator's award. We overrule appellants' first issue.

*Supported by the Pleadings*

Next, appellants argue that the Supplemental Receivership Order is not supported by the pleadings. *See* Tex. R. Civ. P. 301 ("The judgment of the court shall conform to the pleadings . . . ."). A cause of action is sufficiently pled "if the petition gives fair notice of the claim involved." *Kinder Morgan SACROC, LP v. Scurry County.*, 622 S.W.3d 835, 849 (Tex. 2021). "A judgment unsupported by pleadings is generally void." *Adeleye v. Driscal*, 544 S.W.3d 467, 484 (Tex. App.—Houston [14th Dist.] 2018, no pet.). Appellants argue that the "receivership statutes in the Texas Business Organization Code create causes of action" and that Mitte "had no receivership cause of action pending . . . because all of its claims had been fully resolved in the [a]rbitration." Mitte responds that it did not assert a new cause of action and that no amended pleading was needed.

---

[7] Additionally, the district court had jurisdiction to issue the Supplemental Receivership Order to enforce its judgment on the arbitration award. *See generally Alexander Dubose Jefferson & Townsend LLP v. Chevron Phillips Chem. Co.*, 540 S.W.3d 577, 581 (Tex. 2018) ("Generally, every court with jurisdiction to render a judgment also has the inherent authority to enforce its judgments."); *see also* Tex. Civ. Prac. & Rem. Code § 171.092(a) (judgment on arbitration award "may be enforced in the same manner as any other judgment or decree.").

We agree with Mitte. A cause of action is generally defined as "a fact or facts entitling one to institute and maintain an action, which must be alleged and proved in order to obtain relief." *In re Jorden*, 249 S.W.3d 416, 421 (Tex. 2008) (orig. proceeding) (citing *A.H. Belo Corp. v. Blanton*, 129 S.W.2d 619, 621 (Tex. 1939)). The supreme court recognized in *Ritchie* that Section 11.404 "creates a single cause of action with a single remedy: an action for appointment of a rehabilitative receiver." 443 S.W.3d at 872. Citing *Ritchie*, appellants argue that Section 11.405 creates a distinct cause of action for appointment of a liquidating receiver. Although a petition requesting appointment of a liquidating receiver under Section 11.405 states a distinct cause of action from one requesting appointment of a rehabilitative receiver, the district court had already appointed a receiver. That receivership was an "independent and ongoing" proceeding, *see Mitchell*, 523 S.W.3d at 196, and Mitte was not required to file an amended petition asserting a new cause of action to vest the court with jurisdiction to modify it, *see Hill*, 460 S.W.3d at 764; *Anderson*, 2019 WL 6205524, at \*5. We reject appellants' argument that Mitte asserted a new cause of action distinct from the previous receivership cause of action. We overrule appellants' second issue.

*Confirmation of the Final Award*

Appellants argue in their remaining three issues that the district court erred by confirming the final award and denying their motion to vacate. We review a trial court's decision to confirm or vacate an arbitration award under a de novo standard of review. *Moody Nat'l Grapevine MT, LP v. TIC Grapevine 2, LP*, 651 S.W.3d 450, 454 (Tex. App.—Houston [14th Dist.] 2022, pet. denied). However, because the law strongly favors arbitration, our scope of review "is extraordinarily narrow." *Hoskins*, 497 S.W.3d at 494. "All reasonable

20

presumptions are indulged in favor of the award, and none against it." *CVN Grp.*, 95 S.W.3d at 238. Appellants argued that the final award must be vacated because the the arbitrator exceeded her authority and because she decided several claims not covered by the arbitration agreement. *See* Tex. Civ. Prac. & Rem. Code § 171.088(a)(3)(A), (b).

"In arbitration conducted by agreement of the parties, the rule is well established that '[a]n arbitrator derives his power from the parties' agreement to submit to arbitration.'" *Nafta Traders*, 339 S.W.3d at 90 (quoting *City of Pasadena*, 292 S.W.3d at 20). An arbitrator "exceeds his authority only 'when he disregards the contract and dispenses his own idea of justice.'" *Denbury Onshore, LLC v. Texcal Energy S. Tex., L.P.*, 513 S.W.3d 511, 520 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (quoting *D.R. Horton-Tex., Ltd. v. Bernhard*, 423 S.W.3d 532, 534 (Tex. App.—Houston [14th Dist.] 2014, pet. denied)). Thus, "the proper inquiry is not whether the arbitrator decided an issue correctly, but rather, whether he had the authority to decide the issue at all." *Forest Oil Corp. v. El Rucio Land & Cattle Co., Inc.*, 518 S.W.3d 422, 431 (Tex. 2017).

Each limited partnership agreement contains an identical arbitration clause that provides in relevant part:

> The Partners agree to negotiate in good faith in an effort to resolve any dispute related to this Agreement that may arise between the Partners. If the dispute cannot be resolved by negotiation between the Partners who are parties to the dispute, . . . the parties agree to identify an acceptable mediator and set an agreed upon date for mediation of the dispute.

> The Partners agree that in the event that any dispute or controversy arising out of, relating to or in connection with the interpretation, validity, construction, performance, breach or termination of this Agreement cannot be resolved through the mediation process described herein, such dispute shall be settled by binding arbitration . . . in accordance with the Commercial Arbitration Rules of the American Arbitration Association (the "AAA") as then in effect (the "Rules"). . . .

21

> The arbitrator may grant injunctions or other relief in such dispute or controversy. The decision of the arbitrator shall be final, conclusive and binding on the parties to the arbitration.

Each agreement provides that "Partner" "means all General Partners and all Limited Partners, where no distinction is required by the context in which the term is used herein."

*Authority over Paul*

Appellants initially argue that the arbitrator's authority is limited to disputes "between the partners" and Paul is not a partner. They find this limitation in the first sentence, which states that the partners agreed to negotiate in good faith to resolve any dispute "that may arise between the Partners." If this interpretation is correct, the arbitrator would have authority only over the General Partners and Mitte.[8] However, if the General Partners are indeed Paul's alter egos, the arbitrator has authority to disregard the entities' corporate form and render judgment against their owner, Paul.

"Generally, a corporation is a separate legal entity that insulates its owners or shareholders from personal liability for corporate obligations." *U.S. KingKing, LLC v. Precision Energy Servs., Inc.*, 555 S.W.3d 200, 213 (Tex. App.—Houston [1st Dist.] 2018, no pet.). Courts may disregard the corporate form when "the corporation is the alter ego of its owners or shareholders." *Durham v. Accardi*, 587 S.W.3d 179, 184 (Tex. App.—Houston [14th Dist.] 2019, no pet.). Alter ego applies "when there is such unity between corporation and individual that the separateness of the corporation has ceased and holding only the corporation liable would

---

[8] Each limited partnership agreement defines "partners" to mean "all General Partners and all Limited Partners, where no distinction is required by the context in which the term is used herein."

22

result in injustice." *U.S. KingKing*, 555 S.W.3d at 213 (citing *Tryco Enters., Inc. v. Robinson*, 390 S.W.3d 497, 508 (Tex. App.—Houston [1st Dist.] 2012, pet. dism'd)).

Appellants argue that whether the General Partners are Paul's alter egos is a question for the court. "To ensure parties are not forced to arbitrate matters without their agreement, a substantive question of arbitrability—i.e., whether the parties have actually agreed to submit a particular dispute to arbitration—'is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise.'" *Robinson v. Home Owners Mgmt. Enters., Inc.*, 590 S.W.3d 518, 525 (Tex. 2019) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)). Whether such a non-signatory must arbitrate is a substantive question. *See Jody James Farms, JV v. Altman Group, Inc.*, 547 S.W.3d 624, 629 (Tex. 2018). Parties, however, may agree to submit questions of arbitrability to the arbitrator. *RSL Funding, LLC v. Newsome*, 569 S.W.3d 116, 120 (Tex. 2018). "A presumption favors adjudication of arbitrability by the courts absent clear and unmistakable evidence of the parties' intent to submit that matter to arbitration." *Jody James Farms*, 547 S.W.3d at 631.

Appellants argue that nothing rebuts that presumption because the arbitration clause is silent on the question of who decides arbitrability. We agree that the clause does not speak to the issue, and "a contract that is silent on a matter cannot speak to that matter with unmistakable clarity." *Robinson*, 590 S.W.3d at 532 (citing *Jody James Farms*, 547 S.W.3d at 632).[9] However, by "submitting issues for an arbitrator's consideration, parties may agree to

---

[9] The arbitration agreement incorporates the commercial arbitration rules of the American Arbitration Association. Although there is some disagreement about whether incorporating the AAA rules shows clear and unmistakable intent to arbitrate in general, the supreme court has held it does not in disputes between a signatory and a non-signatory. *See Jody James Farms, JV v. Altman Group, Inc.*, 547 S.W.3d 624, 632 (Tex. 2018).

arbitrate disputes that they were not otherwise contractually compelled to arbitrate," *Miller v. Walker*, 582 S.W.3d 300, 305 (Tex. App.—Fort Worth 2018, no pet.); *see Gordon v. Nickerson*, No. 03-18-00228-CV, 2019 WL 2147587, at *4 (Tex. App.—Austin May 17, 2019, pet. denied) (mem. op.) ("An arbitrator's jurisdiction is defined by the contract containing the arbitration clause and by the issues actually submitted to arbitration." (citing *New Med. Horizons II, Ltd. v. Jacobson*, 317 S.W.3d 421, 429 (Tex. App.—Houston [1st Dist.] 2010, no pet.))). The record here indicates that appellants asked the arbitrator to decide this issue. Appellants filed a motion for summary judgment in the arbitration asserting that the arbitrator lacked jurisdiction over Paul because Mitte had not demonstrated that the General Partners are Paul's alter egos. We conclude that the arbitrator did not exceed her authority because the parties submitted the issue to the arbitrator. *See Tom Wright Constr., LLC v. Bolton Steel Erectors*, No. 14-20-00649-CV, 2022 WL 2252665, at *5 (Tex. App.—Houston [14th Dist.] June 23, 2022, no pet.) (mem. op.) (holding arbitrator had authority to award attorney's fees because both sides "submitted the issue of attorney's fees to the arbitrator, and because the arbitration agreement did not expressly prohibit the arbitrator from awarding fees"); *Miller*, 582 S.W.3d at 305–307 (concluding that arbitration panel had authority to award attorneys' fees because both parties requested fees). By Paul committing the General Partners to arbitration, he likewise committed himself if he was the alter ego. *Cf. Wilmington Tr., Nat'l Ass'n v. Hsin-Chi-Su*, 573 S.W.3d 845, 855 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (one basis for exercising jurisdiction "is the alter ego doctrine, which applies when there is such a unity between the corporation and an individual that the separateness of the two has ceased and asserting jurisdiction over only one would result in injustice").

We overrule appellants' third issue.

24

*Joint and Several Liability*

Appellants argue in their fourth issue that the arbitrator exceeded her authority "by purporting to make any entity associated with Paul jointly and severally liable, despite none of those entities being a party to the arbitration, a Partner to the [limited partnership agreements], or both." The final award expressly makes Paul and the General Partners jointly and severally liable for Mitte's damages. Appellants do not challenge this provision but focus on what they call the "Catchall Clause," which states:

> To the extent that any portion of the amounts specified above is not paid to Mitte prior to the winding up and liquidation of either WC 1st and Trinity, LP or WC 3rd and Congress, LP, Mitte shall be paid out of the proceeds WC 1st and Trinity, GP, LLC; WC 3rd and Congress GP, LLC; or any other entities directly owned by Natin Paul or for whom Natin Paul is the ultimate beneficial owner (including but not limited to 1st and Trinity Super Majority, LLC and 3rd and Congress Super Majority, LLC) would otherwise receive under the waterfall distribution.[10]

Appellants argue that the arbitrator exceeded her authority by imposing joint and several liability on the Supermajority Entities even though neither were parties to the arbitration. Mitte responds that the Catchall Clause does not impose joint and several liability but is a remedy that enables Mitte to recover its damages from Paul.

We agree with Mitte. The rule of joint and several liability is:

> Where the tortious acts of two or more wrongdoers join to produce an indivisible injury, that is, an injury which from its nature cannot be apportioned with reasonable certainty to the individual wrongdoers, all of the wrongdoers will be held jointly and severally liable for the entire damages and the injured party may proceed to judgment against any one separately or against all in one suit.

---

[10] Mitte explained in one of its petitions to the arbitrator that "waterfall distribution" is a "term of art" that refers to "a way to allocate investment returns or capital gains among participants of a group or pooled investment."

25

*Landers v. East Tex. Salt Water Disposal Co.*, 248 S.W.2d 731, 734 (Tex. 1952). The Catchall Clause provides that Mitte's damages are payable out of the profits the Supermajority Entities would otherwise receive from the winding up and dissolution of the Limited Partnerships. Nothing in the clause or the award as a whole reflects that the arbitrator determined that the Supermajority Entities committed tortious acts. *See id.* Rather, the Catchall Clause essentially prohibits Paul from transferring the assets of the General Partnerships to additional entities to avoid enforcement of the judgment.

Appellants respond that this does not change that the Catchall Clause purports to bind nonparties to the arbitration. As the non-prevailing parties seeking to vacate the arbitration award, appellants "bear the burden to produce a complete record of the arbitration proceedings" establishing that the arbitrator exceeded her authority. *Center Rose Partners, Ltd. v. Bailey*, 587 S.W.3d 514, 528 (Tex. App.—Houston [14th Dist.] 2019, no pet.). Absent a complete transcript, a reviewing court must presume that adequate evidence supports the award. *See id.* at 528–29; *Shah v. Star Anesthesia, P.A.*, 580 S.W.3d 260, 265 (Tex. App.—San Antonio 2019, no pet.). Appellants did not present a record of the arbitration proceedings. Without a transcript, we cannot determine whether the evidence gave the arbitrator the power to issue the Catchall Clause. *See Bailey*, 587 S.W.3d at 529 (stating that in absence of transcript, reviewing court must "presume that the evidence gave the arbitrator the power to issue the award that appellant alleged exceeded the arbitrator's power"); *Craft v. Davis*, No. 2-07-332-CV, 2008 WL 4180357, at *2 (Tex. App.—Fort Worth Sept. 11, 2008, no pet.) (mem. op.) (holding court could not determine whether arbitrator exceeded his powers because appellant failed to submit transcript of arbitration proceeding). Given the lack of a transcript of the arbitration proceedings, we conclude appellants have failed to establish the arbitrator exceeded her authority.

26

We overrule appellants' fourth issue.

*Derivative Claims*

Appellants argue in their final issue that Mitte's derivative claims are not within the scope of the arbitration clause. *See* Tex. Civ. Prac. & Rem. Code § 171.088(b). They contend that the arbitration clause is limited to disputes "between the Partners" and that Mitte's derivative claims do not qualify because they belong to the Limited Partnerships. Mitte responds that the arbitration clause is not as limited as appellants represent, and, in the alternative, the law treats Mitte's claims as direct ones because the Limited Partnerships are both closely held corporations. *See* Tex. Bus. Orgs. Code § 153.413.

We agree with Mitte. Generally, an individual shareholder of a for-profit corporation "has no individual cause of action for a wrong done to the corporation. But a derivative suit allows a shareholder to step into the shoes of a corporation and sue on its behalf." *KIPP, Inc. v. Grant Me the Wisdom Found., Inc.*, 651 S.W.3d 530, 543 (Tex. App.—Houston [14th Dist.] 2022, pet. denied) (internal citation omitted). Texas law permits partners of limited partnerships to bring derivative suits subject to strict parameters set out in the Texas Business Organizations Code. *See generally* Tex. Bus. Orgs. Code §§ 153.401–.412. A derivative action is generally "in the right of a domestic limited partnership," *id.* § 153.401(1), but "if justice requires. . . a derivative proceeding brought by a limited partner of a closely held limited partnership may be treated by a court as a direct action brought by the limited partner for the limited partner's own benefit" and a recovery "by a limited partner may be paid directly to the plaintiff or to the limited partnership if necessary to protect the interests of creditors or other partners of the limited partnership," *Id.* § 153.413(c). For these purposes, a closely held limited

partnership is one that has "fewer than 35 limited partners" and "no partnership interests listed on a national securities exchange or regularly quoted in an over-the-counter market by one or more members of a national securities association." *Id.* § 153.413(a).

Mitte argued in multiple written submissions to the arbitrator that the Limited Partnerships are closely held and asked the arbitrator to treat this as a direct action to the extent necessary. Absent a complete record of the arbitration proceeding, we must presume the record supports the arbitrator's implicit determination that Mitte's derivative claims met the criteria to be treated as direct actions. *See Clear Creek Indep. Sch. Dist. v. Cotton Commercial USA, Inc.*, 529 S.W.3d 569, 578 (Tex. App.—Houston [14th Dist.] 2017, pet. denied) ("Without a complete record of the arbitration proceedings, we presume adequate support for the arbitration award." (citing *Barton v. Fashion Glass & Mirror, Ltd.*, 321 S.W.3d 641, 645 n.2 (Tex. App.—Houston [14th Dist.] 2010, no pet.))).

We overrule appellants' final issue.

## CONCLUSION

We deny Paul's motion for review of the temporary injunction and Mitte's partial motion to dismiss. We affirm the judgment confirming the arbitration award and the Supplemental Receivership Order.

_____

Edward Smith, Justice

Before Chief Justice Byrne, Justices Kelly and Smith

Affirmed

Filed: February 8, 2023

28